*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2016 UT 41**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

FEDERATED CAPITAL CORP. DBA
FEDERATED FINANCIAL CORP. OF AMERICA,
*Appellant,*

*v.*

CONOR LIBBY DBA CRITTERBOX,
*Appellee,*

FEDERATED CAPITAL CORP.,
*Appellant,*

*v.*

ELENA CHAPA DBA
DELENA MANAGEMENT, INC.,

*Appellee.*

No(s). 20140208, 20140249
Filed September 6, 2016

On Direct Appeal

Third District, Salt Lake
The Honorable Judge Kate A. Toomey
No(s). 129914062, 129911232

Attorneys:

Michael D. Zimmerman, Linda M. Jones, Beth E. Kennedy,
Salt Lake City, for appellant

Lester A. Perry, James N. Taylor, Salt Lake City, for appellees

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which
JUSTICE DURHAM, and JUSTICE PEARCE joined.

ASSOCIATE CHIEF JUSTICE LEE filed a concurring opinion, in which
Justice Himonas joined.

CHIEF JUSTICE DURRANT, opinion of the Court:

## Introduction

¶ 1   In 2005, Appellees signed credit card agreements with Federated Capital Corporation's predecessor-in-interest, Advanta Bank Corporation. The agreements included a forum selection clause and choice of law provision, ensuring that Utah procedural and substantive law would govern any dispute under the contract. The agreements required Appellees to render payment to the address specified on their periodic billing statements. Each billing statement identified an address in Philadelphia, Pennsylvania, as the place of payment. In 2006, Appellees defaulted. And in 2012, Federated brought suit against Appellees in separate proceedings. The district court in each proceeding granted summary judgment, concluding that Utah's borrowing statute adopted Pennsylvania's four-year statute of limitations, which barred Federated's causes of action. Federated appealed the district court's decision in each case, and we consolidated the two appeals. Each appeal presents the same issue: whether an enforceable forum selection clause precludes the application of Utah's borrowing statute.

## Background

¶ 2   In 2005, Connor Libby,[1] a California resident, and Elena Chapa,[2] a Texas resident (collectively, Appellees), signed identical credit card agreements (collectively, the Agreement) with Federated Capital Corporation of America's predecessor-in-interest, Advanta Bank Corporation, a Utah corporation with its principal place of business in Pennsylvania.[3] The Agreement contains a paragraph titled "CONTROLLING LAW AND JURISDICTION." That paragraph includes a choice of law provision that adopts Utah substantive law to govern the Agreement. The paragraph also includes a forum selection clause that requires the parties to bring suit only "IN THE STATE AND FEDERAL COURTS IN UTAH."[4]

---

[1] Mr. Libby was sued as a sole proprietor who is doing business as Critterbox.

[2] Ms. Chapa was sued as a sole proprietor who is doing business as Delena Management, Inc.

[3] Mr. Libby signed the credit card agreement in November 2005. Ms. Chapa signed an identical agreement in April 2005.

[4] The entire provision reads as follows:

(Continued)

¶ 3 The Agreement allowed Appellees to purchase goods and services, receive cash advances, and write checks. In return, Appellees were required to make monthly payments on all debts "at the location and in the manner specified on [their] periodic billing statement[s]." The Agreement also noted that "[p]ayments tendered to and accepted by us or our agent at a location other than the address stated on your periodic billing statement are *not effective until received by us at the address specified*." Each monthly billing statement required Appellees to send their payments to an address in Philadelphia, Pennsylvania, though, in fact, Appellees sent each payment by electronic fund transfer to Advanta's Utah address.

¶ 4 In 2006, Appellees defaulted on their payments. Ms. Chapa made no payments after August 2, 2006, and owed $21,104.11. Mr. Libby made no payments after October 31, 2006, and owed $22,747.30. In 2007, Advanta assigned its interest in Appellees' accounts to Federated, a Michigan corporation licensed in Utah. Nearly six years later, Federated filed separate claims in separate

---

31. CONTROLLING LAW AND JURISDICTION: This Agreement shall be governed solely by and interpreted entirely in accordance with the laws of the State of Utah, except as (and to the degree that) such laws are superseded by the banking or other laws of the United States, regardless of where you reside or where the Business is located. We process the Account application, make the decision to open the Account, and advance credit for you from our Utah offices. You agree that all terms, conditions, and other provisions relating to the method of determining the balance upon which the interest rate or finance charges are applied, and all other terms of this Agreement, are material to the determination of the interest rate. YOU CONSENT TO PERSONAL JURISDICTION IN THE STATE AND FEDERAL COURTS IN UTAH AND AGREE THAT ANY LAWSUIT PERTAINING TO THE ACCOUNT MUST BE BROUGHT ONLY IN SUCH COURTS IN UTAH, REGARDLESS OF WHO FILES THE SUIT, AND MAY BE MAINTAINED ONLY IN THOSE COURTS UNLESS AND UNTIL ANY PARTY ELECTS ARBITRATION PURSUANT TO THE ARBITRATION PROVISION IN THIS AGREEMENT.

proceedings against Ms. Chapa and Mr. Libby on August 2, 2012, and October 4, 2012, respectively.

¶ 5    Appellees individually moved for summary judgment, both arguing that Utah's borrowing statute required the court to apply Pennsylvania's four-year statute of limitations governing contract disputes, thereby barring Federated's claims. The district court agreed and granted summary judgment in favor of Appellees. Thereafter, Federated moved for a new trial in each case, and the district court denied both motions, awarding Appellees attorney fees under the reciprocal attorney fees statute.[5] This sum included additional fees resulting from Federated's motion for a new trial in each case.

¶ 6    Federated now appeals the district court's grant of summary judgment, arguing that the Agreement's forum selection clause makes the borrowing statute inapplicable to its claims. The cases were consolidated for appeal, and we retained the cases on appeal to consider the effect of the Agreement's forum selection clause on Utah's borrowing statute.[6]

**Standard of Review**

¶ 7    Federated appeals the district court's grant of summary judgment. Summary judgment is appropriate when the evidence "shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."[7] "Because a summary judgment challenge presents only legal issues, we review the grant of summary judgment for correctness."[8] In addition, this court reviews for correctness "questions of statutory interpretation"[9] and "[t]he district court's application of a statute of limitations."[10] Here, there are two legal questions before this court:

---

[5] UTAH CODE § 78B-5-826.

[6] The court elected to retain jurisdiction over each case in an April 21, 2014 order. Additionally, the court consolidated the two cases in a May 30, 2014 order.

[7] UTAH R. CIV. P. 56(a).

[8] *Aurora Credit Servs., Inc. v. Liberty W. Dev., Inc.*, 970 P.2d 1273, 1277 (Utah 1998).

[9] *Turner v. Staker & Parson Cos.*, 2012 UT 30, ¶ 7, 284 P.3d 600 (citation omitted).

[10] *Davis v. Provo City Corp.*, 2008 UT 59, ¶ 9, 193 P.3d 86.

(1) whether a forum selection clause that fails to explicitly identify any of Utah's statutes of limitations implicitly requires application of Utah's statute of limitations for written contracts, thereby excluding application of the borrowing statute; and (2) whether Utah's borrowing statute operates to apply a foreign jurisdiction's statute of limitations when the parties could not have brought suit in that jurisdiction because of an enforceable forum selection clause. Jurisdiction over this matter is proper pursuant to Utah Code section 78A-3-102(3)(j).

**Analysis**

¶ 8   Federated raises essentially two arguments on appeal. First, it claims that the district court erred when it relied on the borrowing statute to apply Pennsylvania's four-year statute of limitations because the Agreement's forum selection clause required the court to apply Utah procedural law only, including Utah's six-year statute of limitations for written contracts. Second, it asserts that the borrowing statute applies only where a cause of action that arises in another jurisdiction is "not actionable by reason of the lapse of time," and is thus inapplicable here since it was the forum selection clause that rendered Federated's claims not actionable in Pennsylvania.   The first argument focuses on whether the forum selection clause wholly excludes the borrowing statute, whereas the second argument focuses on whether the statute, by its plain language, even applies to this dispute. We reject both arguments.

¶ 9   Utah's borrowing statute requires a court to apply the limitation period of a foreign jurisdiction when a party's "cause of action arises in [that] jurisdiction" and is "not actionable" there "by reason of the lapse of time."[11] Federated's first argument fails because the Agreement requires that it be governed by all of Utah's laws, both procedural and substantive. Because those laws include the borrowing statute, the forum selection clause does not preclude the borrowing statute from applying to Federated's claims.

¶ 10 Federated's second argument also fails. As a preliminary matter, Federated did not challenge on appeal the district court's conclusion that its breach of contract causes of action arose in Pennsylvania. We therefore accept, for purposes of this appeal, the district court's decision on this point. Further, contrary to Federated's contention, the borrowing statute merely requires that a

---

[11] UTAH CODE § 78B-2-103.

cause of action be "not actionable" in a foreign jurisdiction "by reason of the lapse of time," even if it is "not actionable" by some other independent reason.[12] That condition is met here. Thus, we uphold the district court's decision to apply the borrowing statute to adopt Pennsylvania's four-year statute of limitations and bar Federated's claims against Appellees. In addition, we also award Appellees attorney fees as the prevailing party under Utah's reciprocal fee statute. We address each of these arguments and issues in order.

## I. The Agreement Selects All of Utah's Substantive and Procedural Laws, Which Include the Borrowing Statute

¶ 11 Federated argues that when the parties signed the forum selection clause, they agreed to be bound by Utah procedural law, and "they necessarily agree[d]" that Utah's six-year statute of limitations for written contracts[13] would govern any dispute between them. Accordingly, Federated avers that "the district court disregarded the forum selection clause and applied Utah's borrowing statute to look to the statute of limitations of a foreign jurisdiction,"[14] even though the forum selection clause "renders the procedural laws of any other state inapplicable." As a result, Federated claims that the district court "denied [Federated] the benefit of its bargain."

¶ 12 This argument misconstrues the importance of the forum selection clause in the context of the broader Agreement and the relationship between the Agreement and the borrowing statute. The Agreement contained both a forum selection clause and a choice of law provision. Between these two contractual provisions, the Agreement ensured that the entirety of Utah law would govern a dispute between the parties. Because the borrowing statute is a Utah law, the Agreement requires that the statute apply when "[a] cause of action . . . ar[ose] in [a foreign] jurisdiction."[15] Consequently, the forum selection clause does not prevent the borrowing statute from

---

[12] *Id.*

[13] *See Id.* § 78B-2-309(2).

[14] The district court applied Pennsylvania's four-year statute of limitations applicable to written contracts. *See* 42 PA. CONS. STAT. § 5525(a)(8).

[15] UTAH CODE § 78B-2-103.

applying in this case to adopt Pennsylvania's four-year statute of limitations.

¶ 13 Because a forum selection clause controls where its signatories may bring suit,[16] it binds them to the procedural laws of the selected forum.[17] After all, "[m]atters of *procedure* in a contract action are . . . governed by the law of the forum."[18] A choice of law provision, in contrast, selects the substantive law that will govern a contract dispute. In this case, the Agreement contains both a forum selection clause and a choice of law provision. The forum selection clause requires Federated and Appellees to sue "IN THE STATE AND FEDERAL COURTS IN UTAH."[19] The choice of law provision provides, in relevant part, that the "Agreement shall be governed solely by and interpreted entirely in accordance with the laws of the State of Utah." Failing to identify a single substantive or procedural law for inclusion or exclusion, these contractual provisions require a court to apply the entirety of Utah's laws, procedural and substantive. Because the Agreement provided for application of Utah law and did not expressly exclude the borrowing statute, that borrowing statute is one of the Utah laws that the parties agreed would apply to Federated's breach of contract claim.

¶ 14 Unlike other statutes of limitations, the borrowing statute does not impose a specific time limit on a cause of action. Instead, it prevents a litigant from "pursu[ing an action] in this state," when that action would be barred by a shorter limitations period in the jurisdiction where it arose.[20] As the Missouri Supreme Court

---

[16] *See Innerlight, Inc. v. Matrix Grp., LLC*, 2009 UT 31, ¶¶ 3, 16, 214 P.3d 854.

[17] *See Trillium USA, Inc. v. Bd. of Cty. Comm'rs*, 2001 UT 101, ¶ 15, 37 P.3d 1093.

[18] *Morris v. Sykes*, 624 P.2d 681, 684 n.3 (Utah 1981) (emphasis added).

[19] Neither party identifies any ambiguities in the forum selection clause.

[20] UTAH CODE § 78B-2-103. The borrowing statute does not supplant applicable Utah statutes of limitations, but merely applies a shorter limitations period from a foreign jurisdiction. If the foreign jurisdiction provides for a longer limitations period, a shorter Utah statute of limitations would apply to bar a "cause of action which arises in another jurisdiction." *Id.*

persuasively noted, "[t]he effect of the borrowing statute[] is not to extend the procedural law of one state into another, but the borrowing state adopts and *makes as its own . . .* the statute of the other."[21] Thus, when a court relies on Utah's borrowing statute, it does not merely apply a statute of limitations from another jurisdiction, but borrows or *adopts* that statute, making that statute a Utah statute of limitations for purposes of a particular dispute.

¶ 15 In this case, Federated incorrectly argues that it was "denied . . . the benefit of its bargain" when the district court relied on the borrowing statute to apply Pennsylvania's procedural laws, claiming that the forum selection clause made "the procedural laws of any other state inapplicable." This argument overlooks the fact that the borrowing statute did not merely apply Pennsylvania's shorter statute of limitations, but borrowed that law, making the four-year period a Utah statute of limitations for purposes of the dispute between Federated and Appellees. The forum selection clause straightforwardly requires the Agreement to be governed by all of Utah's laws. The borrowing statute is such a law. The district court did not deny Federated its bargain, but gave the company precisely what it bargained for.

¶ 16 In fact, on appeal Federated essentially asks this court to give it a better deal than it bargained for. As noted previously, the Agreement selected Utah procedural and substantive law to govern the dispute. This places Federated and Appellees in the same position as parties to an oral contract suing *in* a Utah court *under* Utah law. And when parties to an oral contract sue in a Utah court under Utah law, nothing precludes the district court from applying the borrowing statute. We will not conclude that the borrowing statute does not apply here when there is no principled basis to distinguish parties like Federated and Appellees from other parties who are governed by the same law in the same forum.

¶ 17 In summary, the Agreement selects Utah procedural and substantive laws to govern a dispute between the parties. Because the borrowing statute is a Utah law that adopts a shorter foreign limitations period, treating it as a Utah limitations period for purposes of a particular dispute, the forum selection clause does not preclude the borrowing statute from adopting Pennsylvania's four-year statute of limitations as a Utah statute of limitations for

---

[21] *Trzecki v. Gruenewald*, 532 S.W.2d 209, 211 (Mo. 1976) (emphasis added) (citation omitted).

purposes of this case. Thus, having concluded that the borrowing statute was part of the law selected by the parties in their contract, we turn now to the issue of whether the district court properly interpreted and applied that statute to bar Federated's claims.

## II. The Borrowing Statute Bars Federated's Breach of Contract Causes of Action

¶ 18 As shown above, the forum selection clause requires that we consider how the borrowing statute applies in this case. Utah's borrowing statute reads as follows:

> A cause of action which arises in another jurisdiction, and which is not actionable in the other jurisdiction by reason of the lapse of time, may not be pursued in this state, unless the cause of action is held by a citizen of this state who has held the cause of action from the time it accrued.[22]

This statute creates a two-part test. The first part asks whether "[a] cause of action . . . ar[ose] in another jurisdiction." The second part asks whether that cause of action "is not actionable in the other jurisdiction by reason of the lapse of time." If both of these elements are satisfied, a Utah court will adopt that foreign jurisdiction's time limitations, unless the plaintiff can satisfy an exception specified in the statute—an exception not relevant in this case.

¶ 19 Because Federated does not challenge the correctness of the district court's conclusion as to the first part of this statutory test, we accept the district court's decision on this matter that Federated's breach of contract causes of action against Appellees arose in Pennsylvania. Further, as to the second part of the test, we conclude that the borrowing statute applies because Federated's claims were "not actionable . . . by reason of the lapse of time," regardless of whether those claims were also barred by the forum selection clause.

*A. On Appeal, Federated Did Not Argue Whether Its Causes of Action Arose in Pennsylvania or Utah, Claiming that the Question Was Irrelevant Because of the Forum Selection Clause*

¶ 20 The first element of the borrowing statute looks to whether "[a] cause of action . . . ar[ose] in another jurisdiction." In its opposition to summary judgment in each case before the district court, Federated assumed that its causes of action arose at the place

---

[22] UTAH CODE § 78B-2-103.

of performance under the Agreement. Yet, Federated reasoned that because Appellees made each monthly payment electronically to Advanta in Utah, its causes of action for Appellees' defaults under the Agreement arose in Utah. In both cases, the district court rejected this argument, noting that Appellees' "performance under the contract would be deemed effective only when the payments reached Pennsylvania."

¶ 21 On appeal, Federated abandoned its argument that the claims arose in Utah. Instead, it averred that the district court improperly "focused its analysis on where the claims purportedly 'arose,' never recognizing that the question was irrelevant because the parties agreed in advance to Utah as the forum state for their claims." Further, in its reply brief, Federated argued that "the parties included the forum selection clause to make clear that 'place of performance' would not govern procedure."

¶ 22 Ultimately, at no point on appeal did Federated challenge the district court's conclusion as to where its causes of action arose. Instead, it simply argued that the forum selection clause made the borrowing statute analysis of where its causes of action arose irrelevant. Because Federated did not raise any argument on appeal about where its causes of action arose, we are not called upon to review the correctness of the district court's conclusion that under the Agreement Federated's breach of contract causes of action against Appellees arose in Pennsylvania.[23] Accordingly, we accept, for purposes of this appeal, the district court's conclusion that Federated's causes of action arose in Pennsylvania and turn to the second part of the borrowing statute.[24]

---

[23] *Allen v. Friel*, 2008 UT 56, ¶ 7, 194 P.3d 903 ("In general, if a defendant has not raised an issue on appeal, [an appellate court] may not consider the issue sua sponte." (alteration in original) (citation omitted)). *Joseph v. Salt Lake City Civil Serv. Comm'n*, 2002 UT App 254, ¶ 8, 53 P.3d 11 (noting that if a party fails to raise a non-jurisdictional issue on appeal, a court may not decide the issue sua sponte).

[24] We briefly note that the parties dispute whether the district court properly interpreted *Fin. Bancorp, Inc. v. Pingree & Dahle, Inc.*, 880 P.2d 14 (Utah Ct. App. 1994). The district court relied on that case for the proposition that "[u]nless the contract states otherwise, a cause of action for a breach of contract generally arises where the contract is to be performed." *Id.* at 17. The district court relied on this

(Continued)

*B. The Borrowing Statute Applies Because Federated's Causes of Action
Were "Not Actionable by Reason of" Pennsylvania's Four-Year
Statute of Limitations*

¶ 23 After determining that a cause of action arises in another jurisdiction, Utah's borrowing statute requires a court to determine whether the cause of action "is not actionable in the other jurisdiction by reason of the lapse of time."[25] Federated claims that

> [t]he Borrowing Statute applies in limited circumstances, namely, when a claim arises in another jurisdiction but cannot be maintained—or "is not actionable"—there "by reason of the lapse of time." . . . [Here], Federated's claims are not barred in another jurisdiction "by reason of the lapse of time." Rather, they are barred in *every* jurisdiction except Utah by reason of the Agreement's forum selection clause. Under a plain language analysis, the district court erred when it applied the statute and ruled that Federated's claims are time-barred.

In other words, Federated interprets the borrowing statute as applying when a cause of action is "not actionable [*solely*] by reason of the lapse of time."

¶ 24 We do not read the statute in this manner. The statute unambiguously applies *whenever* a cause of action is "not actionable . . . by reason of the lapse of time," regardless of whether some independent reason also renders a cause of action "not actionable." Even if a defendant had multiple alternative defenses, one of which is a statute of limitations, we would not conclude that the claim is no longer "not actionable" by reason of the lapse of time just because it is also "not actionable" for other reasons. In other words, an alternative basis for dismissal does not eliminate the

---

proposition to conclude that the place of performance for payment under the Agreement was Pennsylvania. Federated argues that "*Pingree* is inapplicable" "because the contract there did not contain a forum selection clause and did not specify the forum state for the plaintiff's action." Because *Pingree* is relevant to a determination of where Federated's breach of contract causes of action arose—an issue Federated has not raised on appeal—we do not address it.

[25] UTAH CODE § 78B-2-103.

conclusion that a cause of action is not actionable by reason of the lapse of time.

¶ 25 Federated resists this interpretation of the statute, however, due to the primary policy behind borrowing statutes. Specifically, Federated rightly notes that borrowing statutes serve to discourage forum shopping.[26] From this Federated concludes that because the forum selection clause did not permit the parties to shop for a more favorable forum in this case, "the policy reasons for borrowing statutes support a determination that Utah's Borrowing Statute is inapplicable here." Though forum shopping concerns are not present here, this fact does not permit us to create an exception not provided for in the statute.

¶ 26 Generally, the judiciary cannot rewrite a statute it deems "susceptible of improvement."[27] Accordingly, when the legislature fails to supply an exception to a statute's application, we will not rewrite the statute to include one.[28] "[I]t is not [the court's] prerogative to rewrite [the statutory language] or to question the wisdom, social desirability, or public policy underlying it."[29] The Utah Legislature drafted the borrowing statute with a single exception. That exception renders the borrowing statute inapplicable where a cause of action, which arose in a foreign jurisdiction,

---

[26] *See Patch v. Playboy Enters.*, 652 F.2d 754, 756 (8th Cir. 1981) (noting that borrowing statutes "prevent[] a plaintiff from gaining more time to bring an action merely by suing in a forum other than where the cause of action accrued"); *Miller v. Stauffer Chem. Co.*, 581 P.2d 345, 348 (Idaho 1978) (noting that borrowing statutes "discourage forum shopping by requiring the trial court to 'borrow' the statute of limitations of [another] jurisdiction").

[27] *Hill v. Nakai*, 2013 UT 46, ¶ 26, 311 P.3d 1016 (quoting *Badaracco v. Comm'r*, 464 U.S. 386, 398 (1984)).

[28] *See Amy v. City of Watertown*, 130 U.S. 320, 327 (1889) (refusing to include an exception for a party that eludes service of process, even though the exception's absence appeared to be a legislative oversight); *see also Texas & P. Ry. Co. v. Interstate Commerce Comm'n*, 162 U.S. 197, 208 (1896) ("To hold otherwise would be for the commission to create exceptions to the operation of the statute not found in the statute, and no other power but congress can create such exception in the exercise of legislative authority.").

[29] *Salt Lake Child & Family Therapy Clinic, Inc. v. Frederick*, 890 P.2d 1017, 1021 (Utah 1995).

accrued in favor of a resident of this state and has been held by that resident since the time of its accrual.[30] Since the legislature did not exclude cases, such as this one, where the ability to forum shop is not present, it would be improper for us to rewrite the statute to include one now. The statute calls for uniform application absent one narrow statutory exception.[31] Because Federated as a Michigan corporation cannot satisfy that exception, we must apply the borrowing statute to bar its causes of action against Appellees.

¶ 27 Each of Federated's arguments fail. The borrowing statute applies. The breach of contract causes of action were rendered "not actionable" in this case "by reason of" Pennsylvania's four-year statute of limitations. Thus, we hold that the district court rightly applied Utah's borrowing statute in this case and affirm that court's grant of summary judgment in favor of Appellees. Consonant with this disposition, we also conclude that Appellees should receive their attorney fees.

## III. Appellees Should Receive Their Attorney Fees

¶ 28 Utah's reciprocal fee statute permits a court to award attorney fees to the prevailing party in civil litigation based upon a contract when the contract provides attorney fees to at least one party.[32] In this case, the Agreement provided attorney fees to Federated.[33] Relying on the reciprocal fee statute, the district court

---

[30] UTAH CODE § 78B-2-103 (noting that a foreign cause of action barred by reason of the lapse of time n "may not be pursued in this state, unless the cause of action is held by a citizen of this state who has held the cause of action from the time it accrued").

[31] *Cf. Ins. Co. of N. Am. v. ABB Power Generation, Inc.*, 690 N.E.2d 1249, 1252 (N.Y. 1997) (noting that New York's borrowing statute serves the important purpose of "add[ing] clarity to the law and . . . provid[ing] the certainty of uniform application to litigants," and concluding that it must apply even when the parties could not forum shop).

[32] UTAH CODE § 78B-5-826.

[33] Paragraph 5 of the parties' Agreement provides: "To the extent not prohibited by applicable law, you agree to pay all collection costs, including (but not limited to) attorneys fees of 25% of any amount we bring a legal claim to collect."

awarded attorney fees to Appellees in both proceedings below.[34] The awards in each proceeding included those fees incurred to litigate Federated's motion for a new trial.[35] Because Appellees prevail on appeal, we remand this case to the district court for an award of attorney fees, litigation expenses, and court costs incurred on appeal.

## Conclusion

¶ 29 The borrowing statute applies to Federated's causes of action. Because its causes of action arose in Pennsylvania, and that jurisdiction's four-year statute of limitations applicable to contracts rendered the causes of action "not actionable," we apply the borrowing statute to adopt that statute of limitations and bar Federated's claims. Consistent with this disposition of the case, we award attorney fees to Appellees as the prevailing party and remand for the district court to determine the appropriate fee award.

———————

ASSOCIATE CHIEF JUSTICE LEE, concurring:

¶ 30 I agree with and thus concur in the majority opinion in full. Specifically, I agree that Federated Capital's cause of action is subject to a four-year Pennsylvania statute of limitations under our Utah borrowing statute, Utah Code section 78B-2-103. And I concur in the court's conclusion that Federated's claim is time-barred because it was not filed within the four-year limitations period under Pennsylvania law.

¶ 31 The majority rightly rejects the two challenges to this holding advanced by Federated Capital—that the forum-selection clause in the parties' credit agreement dictated the application of the six-year limitations period under Utah law, and that the same clause foreclosed the conclusion that the cause of action is "not actionable by reason of the lapse of time." I concur in the court's analysis on these issues.

———————————————————————

[34] In the Connor Libby litigation, the district court awarded $11,920.34. In the Elena Chapa litigation, the district court awarded $9,247.76.

[35] In total, the district court required Federated to pay attorney fees in excess of $38,000. In the Connor Libby litigation, the district court awarded an augmented attorney fees award of $11,788.40, totaling $23,709.04. In the Elena Chapa litigation, the district court awarded total augmented attorney fees of $14,292.12.

¶ 32 I write separately, however, to emphasize the limited nature of the court's decision in this case. I note, in particular, that the court's decision follows from a key concession made by Federated Capital in the course of this litigation—that its "cause of action ar[o]se[]" in another jurisdiction" (Pennsylvania). *See supra* ¶ 17. And I would emphasize that this concession takes a threshold question—of the applicability of the borrowing statute in a case like this one—off the table.

¶ 33 This is an important question that a court should take up in a future case, and that should not be deemed to be foreclosed by our decision today. It is by no means a foregone conclusion that a claim asserted under a credit agreement like Federated Capital's should be deemed to trigger the borrowing statute. The agreement in question contains not just a forum-selection clause but also a choice-of-law clause. *See supra* ¶ 1. And because the choice-of-law clause dictates the application of Utah law, it is at least arguable that Federated's claim arises not in Pennsylvania but in Utah.

¶ 34 The borrowing statute's "arises in" formulation, after all, is at least arguably a reference to a choice-of-law principle.[36] And the choice-of-law determination in a case like this one is dictated not by the common-law inquiry into place of performance or most significant relationship, but by the choice-of-law clause itself (which all agree is enforceable).[37] In light of the choice-of-law clause, there can be no question that Utah law controls the disposition of this case. See supra ¶ 11 (acknowledging that both substantive and procedural law of Utah controls in this case). And for that reason it is at least arguable that Federated's claim "arises in" Utah and not in "another jurisdiction."

---

[36] *See Emp'rs Ins. of Wausau v. Ehlco Liquidating Trust*, 723 N.E.2d 687, 693 (Ill. App. Ct. 1999) (noting that "borrowing statutes are choice of law rules" governed by choice of law tests); *Bates v. Cook, Inc.*, 509 So. 2d 1112, 1114 (Fla. 1987) (asserting that the argument that a borrowing statute should employ a test distinct from general conflict-of-law rules has been "universally assailed"); *Myers v. Cessna Aircraft Corp.*, 553 P.2d 355, 366–67 (Or. 1976) (applying choice-of-law rules to determine where a cause of action arises).

[37] *See Jacobsen Constr. Co. v. Teton Builders*, 2005 UT 4, ¶ 12, 106 P.3d 719 (applying a choice-of-law clause rather than common law tests).

A.C.J. Lee, concurring

¶ 35 This question came up at oral argument in this case. And Federated expressly waived any reliance on the notion that its claim arises in Utah.[38] For that reason I concur in the majority's analysis, which is premised on Federated's waiver of any argument that its claim arises outside of Pennsylvania. Federated's waiver is a binding one. And it forecloses our ability to assess the question I highlight here.

¶ 36 This issue should be decided in a future case. When the argument is squarely raised, our courts should decide whether the borrowing statute's "arises in" formulation is a reference to applicable choice-of-law rules or is dictated simply by the longstanding "place of performance" test.

¶ 37 I see arguments going both ways on this question. Our precedent, after all, long ago interpreted the borrowing statute as incorporating the place of performance test. *See Lawson v. Tripp*, 95 P. 520, 522–23 (Utah 1908). And it is certainly possible to view the statute as retaining that test going forward. Presumably that was Federated Capital's view, and why it conceded that its claim arose in Pennsylvania. But it also seems possible to interpret the statute as embracing whatever evolving standard our law has adopted for choosing the governing law. If so, a claim arising under a contract with an enforceable choice-of-law clause would arise in the state whose law governs its disposition.

¶ 38 That is a question for another day, however. The majority is right to decline to reach it here given Federated Capital's concession. I write separately only to highlight what I see as an important issue, and to state my view that our decision today should not be deemed to foreclose further analysis of this underlying question in a future case.

---

[38] Recording of Oral Argument at 6:35-7:20, *Federated Capital v. Libby*, 2016 UT __, __ P.3d __, available at https://perma.cc/XLC8-26N4 (conceding that Federated was not challenging the district court's use of the place of performance test to determine where the cause of action arose).