2021 UT 15

IN THE

## SUPREME COURT OF THE STATE OF UTAH

1600 BARBERRY LANE 8 LLC, 1600 BARBERRY LANE 9 LLC,
*Appellants,*

*v.*

COTTONWOOD RESIDENTIAL O.P. LP, COTTONWOOD CAPITAL
PROPERTY MANAGEMENT II, LLC, COTTONWOOD CAPITAL
MANAGEMENT, INC., DANIEL SHAEFFER,
*Appellees.*

No. 20181020
Heard September 16, 2020
Filed May 27, 2021

On Direct Appeal

Third District, Salt Lake
The Honorable Robert P. Faust
No. 170904221

Attorneys:

Andrew G. Deiss, Salt Lake City, Kenneth J. Catanzarite, Eric V.
Anderton, Anaheim, CA, for appellants

Matthew L. Lalli, Dillon P. Olson, Salt Lake City, Henry H. Oh,
Los Angeles, CA, for appellees

JUSTICE PETERSEN authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE HIMONAS, and JUSTICE PEARCE joined.

JUSTICE PETERSEN, opinion of the Court:

### INTRODUCTION

¶1　Appellants sued under a contract with a choice of law
provision, which required contractual disputes to be governed by
Georgia law. Appellees prevailed on a motion to dismiss in the
district court, and the court awarded them attorney fees under a
provision of the contract. Appellants now seek reversal of that
award. The question before us is whether Georgia or Utah law

determines the award of contractual attorney fees in this case. This requires us to address as a threshold question whether a claim for contractual attorney fees is a substantive matter governed by the law of the contractually chosen jurisdiction, or a procedural matter governed by the law of the forum.

¶2    We conclude that a claim for contractual attorney fees is substantive in nature, governed in this case by Georgia law. Because Appellants have not shown an error in the district court's award of attorney fees under Georgia law, we affirm.

## BACKGROUND[1]

¶3    Appellants 1600 Barberry Lane 8, LLC and 1600 Barberry Lane 9, LLC (collectively, Barberry) each own a fractional interest in an apartment complex in Georgia as tenants in common. Barberry entered into a Property Management Agreement (PMA) with a company called Daymark Residential and Asset Management and its "control person, principal, director and officer," Todd Mikles (collectively, Daymark). In the PMA, Barberry agreed to pay Daymark for asset and property management services. The PMA contains a choice of law provision, which provides that the agreement "is governed by and construed in accordance with the internal laws of the State where the Property is located." In this case, that state is Georgia.

¶4    A few years after Barberry obtained its interest in the property, Mikles and his affiliates purchased Daymark. They recommended to Barberry that it should allow another company—Appellees (collectively, Cottonwood)[2]—to take over asset and property management for the apartment complex. Barberry agreed.

_____

[1] Because the underlying action was decided on a motion to dismiss, "we accept the factual allegations in the complaint as true and interpret those facts, and all reasonable inferences drawn therefrom, in a light most favorable to the plaintiff as the nonmoving party" and "recite the facts accordingly." *Olguin v. Anderton*, 2019 UT 73, ¶ 4 n.3, 456 P.3d 760 (citation omitted).

[2]    Appellees include several related entities, which are the subject of various, specific allegations in the complaint. However, because those specifics are not relevant to the issue before us, we refer to Appellees collectively as Cottonwood.

¶5　After several years of this arrangement, Barberry became dissatisfied with the fees it had been paying and filed suit in California. But the suit was dismissed for lack of personal jurisdiction.

¶6　Barberry then sued Cottonwood in Utah. The thrust of its complaint was that unbeknownst to Barberry, Daymark secretly sold the PMA to Cottonwood for $8 million and, as the assignee of the PMA, Cottonwood became the property manager under the agreement. Barberry alleged that Daymark and then Cottonwood had collected above-market fees and commissions for their services. And Barberry claimed that in so doing, Cottonwood had breached the PMA or, in the alternative, interfered with the PMA. And it asserted Cottonwood had breached a fiduciary duty to Barberry arising from its role as property manager or, in the alternative, aided and abetted Daymark's breach of fiduciary duty.

¶7　Cottonwood moved to dismiss. It argued, in part, that it was not liable for breach of contract because it was not a party to any agreement with Barberry. It asserted that it had not purchased the PMA and become the property manager, as alleged by Barberry. Rather, it had entered into a sub-property management agreement with Daymark, in which Daymark engaged Cottonwood as a subcontractor to "sub-manage" the property. And it asserted Barberry was not a party to this sub-agreement. Accordingly, Cottonwood argued it could not be liable to Barberry for breach of contract because it had not entered into any contracts with Barberry. Cottonwood attached a copy of the sub-property management agreement as an exhibit to its motion.

¶8　The district court granted the motion to dismiss on multiple alternative grounds. The court agreed with Cottonwood's breach of contract argument, concluding that Cottonwood had entered into the sub-property management agreement with Daymark and was a "subcontractor" that "sub-manage[d]" the property. Additionally, the court concluded that even if Cottonwood was the property manager under the PMA, Barberry's allegations did not amount to a violation of the PMA. With regard to the claims sounding in breach of fiduciary duty, the court concluded that the PMA did not give rise to any fiduciary relationship between the parties under Georgia law.

¶9　After prevailing on the motion to dismiss, Cottonwood filed a motion seeking recovery of its attorney fees. Barberry

objected to the request for fees and contested the amount Cottonwood sought. The court held a hearing on the matter.

¶10 Cottonwood argued that it was entitled to fees under the attorney fee provision of the PMA, which provides:

> In any action or proceeding between Property Manager and the Tenants in Common arising from or relating to this Agreement or the enforcement or interpretation hereof, the party prevailing in such action or proceeding shall be entitled to recover from the other party all of its reasonable attorneys' fees and other costs and expenses of the action or proceeding.

¶11 Barberry opposed the motion, primarily arguing that Cottonwood was not entitled to fees under the terms of this provision. First, Barberry argued that Georgia law should govern the attorney fee provision just as it did the rest of the PMA. And Barberry asserted that under Georgia law, an attorney fee provision is interpreted like any other contractual provision—by reading the language of the agreement. Looking to the terms of the attorney fee provision, Barberry argued that it applied only in an "action or proceeding *between the Property Manager and the Tenants in Common.*" And it reasoned that because the district court had concluded Cottonwood was a sub-contractor rather than the property manager, Cottonwood could not collect its fees under this provision.

¶12 Cottonwood responded that Utah law should apply to the provision because a claim for attorney fees presents a procedural issue and matters of procedure are governed by the law of the forum state. Under Utah law, Cottonwood argued that even though it was not the property manager under the PMA, it was entitled to its attorney fees pursuant to Utah's Reciprocal Fee Statute, which permits a prevailing party to recover its fees if the underlying litigation is brought pursuant to a contract that permits recovery of attorney fees by at least one of the parties to the litigation. *See* UTAH CODE § 78B-5-826; *see also Hooban v. Unicity Int'l, Inc.*, 2012 UT 40, ¶¶ 28–29, 285 P.3d 766.[3]

---

[3] Barberry argued that, even if Utah law applied, Cottonwood would not be entitled to attorney fees because Utah's Reciprocal Fee Statute was inapplicable.

¶13 Alternatively, Cottonwood argued that even if Georgia law applied, it should still prevail because Barberry could not take a position contrary to the allegations in its complaint.[4] Cottonwood asserted that since Barberry's complaint alleged that Cottonwood had purchased the PMA and, as assignee, become the property manager under the agreement, Georgia's judicial admissions doctrine prevented Barberry from disclaiming that position.[5]

¶14 The district court ruled in favor of Cottonwood and awarded it attorney fees. The court recognized that Utah law is unsettled as to whether an award of contractual attorney fees is considered substantive or procedural for purposes of determining choice of law. But it avoided ruling on the issue because it determined Cottonwood was entitled to attorney fees under the law of either jurisdiction. The court concluded that if Utah law applied, Cottonwood was entitled to its fees under the Reciprocal Fee Statute. And it determined that if Georgia law applied, Georgia's judicial admissions doctrine would prohibit Barberry from taking a position contrary to the allegation in its complaint that Cottonwood was the property manager under the PMA.

¶15 Barberry separately appealed both the district court's order to dismiss and its order awarding attorney fees. Both cases were transferred to the court of appeals. But we recalled the instant appeal involving the attorney fee order.

¶16 In its appeal of the dismissal order in the court of appeals, Barberry argued that the district court should not have considered the sub-property management agreement that Cottonwood attached to its motion to dismiss because the sub-agreement was not attached to or referenced in the complaint. *1600 Barberry Lane 8 LLC v. Cottonwood Residential OP LP*, 2019 UT App 146, ¶ 8 n.5, 449 P.3d 949, *cert. denied*, 456 P.3d 388 (Utah 2019). The sub-agreement was the basis of the district court's finding that Cottonwood had not been assigned the PMA but was merely

---

[4] Cottonwood also argued it was entitled to attorney fees as a third-party beneficiary to the PMA. The district court rejected this argument, and it is not at issue on appeal.

[5] Georgia's judicial admissions doctrine allows "either party [to] avail himself or herself of allegations or admissions made in the pleadings of the other." GA. CODE ANN. § 24-8-821.

engaged as a subcontractor to Daymark. And Barberry argued that before considering the sub-agreement, the district court should have converted the motion to a motion for summary judgment and proceeded under Utah Rule of Civil Procedure 56. *Id.*

¶17 But the court of appeals affirmed the order of dismissal without addressing whether the district court's consideration of the sub-agreement was improper. *Id.* It concluded that the district court's alternative ground for dismissal—that Barberry's allegations did not make out a violation of the PMA, interference with the PMA, or a breach of fiduciary duty even if they were true—was a sufficient basis to dismiss the complaint. *Id.* ¶ 27. Barberry then petitioned this court for certiorari, which we denied. *1600 Barberry Lane 8 L* [sic] *v. Cottonwood Residential*, 456 P.3d 388 (Utah 2019).

¶18 Barberry's appeal regarding the district court's attorney fee award is before us. Here, Barberry argues that Cottonwood is not entitled to attorney fees under the PMA because the applicable provision in the agreement provides for fees only "[i]n any action or proceeding between the Property Manager and the Tenants in Common." Barberry asserts that because the district court determined on the merits that Cottonwood was not the property manager under the PMA, Cottonwood is not entitled to fees under the clear terms of the PMA.

¶19 Barberry contests the district court's ruling that, despite the language of the PMA, Cottonwood is entitled to recover its fees under both Utah and Georgia law. As an initial matter, Barberry asserts that Georgia law should apply because a claim for attorney fees is substantive in nature, and thus should be governed by the law of the parties' contractually chosen jurisdiction. It argues that Utah's Reciprocal Fee Statute therefore does not apply to equalize each party's right to recover fees, and Georgia has no corollary. Barberry argues in the alternative that if we decide Utah law does govern the attorney fee question, the Reciprocal Fee Statute should not apply under the circumstances here.

¶20 Finally, Barberry argues that even if the district court did not err in its award of attorney fees, the amount of the award was unreasonable.

¶21 We exercise jurisdiction under Utah Code section 78A-3-102(3)(j).

**STANDARDS OF REVIEW**

¶22  We must determine which state's law governs a claim for contractual attorney fees and whether Cottonwood is entitled to recover its attorney fees here. These are both questions of law, which we review for correctness.[6] *Davis County v. Purdue Pharma, L.P.*, 2020 UT 17, ¶ 7, 463 P.3d 619 (stating that "questions of law are reviewed for correctness"); *Valcarce v. Fitzgerald*, 961 P.2d 305, 315 (Utah 1998) (noting that whether attorney fees are recoverable is a question of law reviewed for correctness). We review the reasonableness of an attorney fee award for abuse of discretion. *Valcarce*, 961 P.2d at 316.

**ANALYSIS**

**I. CHOICE OF LAW**

¶23 To assess whether the district court was correct in awarding attorney fees to Cottonwood, we must first determine which state's law governs this issue. This requires us to analyze whether a claim for contractual attorney fees is substantive or procedural in nature because, in an action based on a contract with a choice of law provision, substantive matters are governed by the law of the chosen jurisdiction but matters of procedure are governed by the law of the forum. *Federated Cap. Corp. v. Libby*, 2016 UT 41, ¶ 13, 384 P.3d 221; *Morris v. Sykes*, 624 P.2d 681, 684 n.3 (Utah 1981). So here, Utah law governs matters of procedure and we apply Georgia law to substantive matters.

¶24 "Substantive law is defined as the positive law which creates, defines and regulates the rights and duties of the parties and which may give rise to a cause for action." *Petty v. Clark*, 192 P.2d 589, 593 (Utah 1948). Conversely, "procedural law merely 'pertains to and prescribes the practice and procedure or the legal machinery by which the substantive law is determined or made effective.'" *Brown & Root Indus. Serv. v. Indus. Comm'n of Utah*, 947 P.2d 671, 675 (Utah 1997) (citation omitted).

¶25 To determine whether contractual attorney fees are substantive or procedural matters, we apply Utah's choice of law

---

⁶ Because standards of review are "matter[s] of procedural, rather than substantive, law," Utah law controls the standard of review of the issues on appeal. *Waddoups v. Amalgamated Sugar Co.*, 2002 UT 69, ¶ 20, 54 P.3d 1054.

rules. *See Waddoups v. Amalgamated Sugar Co.*, 2002 UT 69, ¶ 14, 54 P.3d 1054 ("Since Utah is the forum state, Utah's choice of law rules determine the outcome of the conflict." (citation omitted)); *see also* Restatement (Second) of Conflict of Laws § 122 (1971) (noting that the forum state applies its own rules to determine "how litigation shall be conducted").

¶26 This is an issue of first impression in Utah, and we find it helpful to survey the reasoning employed in other jurisdictions. *See, e.g.*, *Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 2009 UT 65, ¶¶ 49, 52–56, 221 P.3d 234 (surveying other jurisdictions' treatment of a cause of action previously unrecognized in Utah). A review of other jurisdictions reveals that this is not a settled issue. *See Boswell v. RFD-TV the Theater, LLC*, 498 S.W.3d 550, 557–59 (Tenn. Ct. App. 2016) (collecting cases that demonstrate the various ways other jurisdictions have resolved this issue).

¶27 A few jurisdictions have found an award of contractual attorney fees to be procedural and thus governed by the law of the forum state. For example, the Nebraska Supreme Court held that, because an award of contractual attorney fees is a remedy, it must be considered procedural. *Neb. Nutrients, Inc. v. Shepherd*, 626 N.W.2d 472, 518 (Neb. 2001), *abrogated in part on other grounds by Sutton v. Killham*, 825 N.W.2d 188 (Neb. 2013). Likewise, the New Jersey Supreme Court, relying on prior case law that found the issue of attorney fees "a matter of practice and procedure," determined that even where the parties contracted for attorney fees, "the award . . . is a procedural rather than a substantive law issue." *N. Bergen Rex Transp., Inc. v. Trailer Leasing Co. Div. of Keller Sys, Inc.*, 730 A.2d 843, 848 (N.J. 1999).

¶28 Other courts have found the issue of contractual attorney fees to be substantive in nature because an attorney fee award is a "substantive right[] created by the contract." *PVI, Inc. v. Ratiopharm GmbH*, 253 F.3d 320, 329 (8th Cir. 2001) (applying Missouri law). In Oregon, because a claim for attorney fees "must be pled and proved" and because the fees "are not merely costs incidental to judicial administration," an award of contractual attorney fees is considered a substantive matter. *Seattle-First Nat'l Bank v. Schriber*, 625 P.2d 1370, 1373 (Or. Ct. App. 1981) (citing *Gorman v. Boyer*, 547 P.2d 123 (Or. 1976)). Likewise, the Texas Court of Appeals noted that a "claim for attorneys' fees for breach of contract is not an independent cause of action," but is instead "part of [a] substantive claim for breach of contract." *Midwest*

*Med. Supply Co., LLC v. Wingert*, 317 S.W.3d 530, 537 (Tex. App. 2010). In so concluding, the court reasoned, "Because the 'award of attorney's fees is inextricably intertwined with the substantive issue of contractual liability—an issue that is [i]ndisputably governed by the choice-of-law provision,' . . . the award of attorneys' fees [i]s a substantive contractual issue governed by the laws chosen by the parties." *Id.* (citation omitted); *see also Man Indus. (India), Ltd. v. Midcontinent Express Pipeline, LLC*, 407 S.W.3d 342, 353–54 (Tex. App. 2013) (recognizing that attorney fees for breach of contract are substantive but determining a discretionary attorney fee award under a statute to be procedural).

¶29 We find persuasive the reasoning of courts holding that an award of contractual attorney fees is substantive in nature. In *Boswell*, the Tennessee Court of Appeals held that contractual attorney fees presented a substantive issue for choice of law purposes. 498 S.W.3d at 560. After surveying the state of the law in other jurisdictions, the court reasoned that "[c]ontracts providing for attorney's fees impose a contractual liability that one enforces as a matter of substantive right. Rules regarding the recovery of contractual attorney's fees define the parties' rights and obligations." *Id.* So the court concluded that "a state's rules regarding the recovery of contractual attorney's fees are substantive rules governing the substantive rights of the parties." *Id.*

¶30 We take a similar view. As previously discussed, substantive law is "the positive law which creates, defines and regulates the rights and duties of the parties and which may give rise to a cause for action." *Petty*, 192 P.2d at 593. An attorney fee provision in a contract creates the right to seek attorney fees and defines who may seek attorney fees under the contract. And a state's rules about the recovery of contractual attorney fees regulates the substantive rights of the parties. Accordingly, we hold that a claim for contractual attorney fees presents a substantive issue for purposes of determining choice of law.[7]

---

[7] We note that the parties framed this as a categorical question—in other words, whether the award of attorney fees in general is a procedural or substantive matter. And we acknowledge that some courts have addressed the issue in this way. *See, e.g., Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*, 738 F.3d 960, 974 (9th Cir. 2013) (forecasting that the Alaska Supreme

(continued . . .)

¶31 Here, the attorney fee provision in the PMA was "part and parcel" of Barberry's original claim for breach of contract, so it "should be governed by the choice-of-law provision in that same [c]ontract." *See Boswell*, 498 S.W.3d at 560. Thus, because the parties contracted to have Georgia law govern the PMA, we must apply Georgia law to determine whether the district court erred in awarding Cottonwood attorney fees.

## II. THE DISTRICT COURT'S ATTORNEY FEE ORDER

¶32 The district court concluded that Cottonwood was entitled to attorney fees under either Georgia or Utah law. As we have determined that this is a substantive issue, we apply only Georgia law to determine whether the district court's ruling was correct. *See Federated Cap. Corp. v. Libby*, 2016 UT 41, ¶ 13, 384 P.3d 221.

¶33 In Georgia, "in the absence of a controlling statute, a party's entitlement to attorney fees under a contractual provision is determined by the usual rules of contract interpretation." *Benchmark Builders, Inc. v. Schultz*, 711 S.E.2d 639, 640 (Ga. 2011) (citation omitted). And "[w]here the terms of a written contract are clear and unambiguous, the court will look to the contract

---

Court would hold that, in a choice of law action, attorney fees would be considered procedural in Alaska); *Sentinel Indus. Contracting Corp. v. Kimmins Indus. Serv. Corp.*, 743 So. 2d 954, 960 (Miss. 1999) ("In Mississippi, the law of the forum applies to all procedural and remedial issues. That includes attorneys' fees . . . ." (citations omitted)); *Smithco Eng'g, Inc. v. Int'l Fabricators, Inc.*, 775 P.2d 1011, 1018 (Wyo. 1989) (noting that, in a choice of law action, because Oklahoma's attorney fee statute is located in Oklahoma's Civil Procedure Code, an award of attorney fees is procedural). But we decline to paint with such a broad brush. An award of attorney fees may be procedural in some contexts, *see, e.g.*, UTAH R. CIV. P. 11(c) (providing for an award of attorney fees alongside rule 11 sanctions in certain circumstances), and substantive in others, *see, e.g.*, *Boswell v. RFD-TV The Theater*, 498 S.W.3d 550, 559 (Tenn. Ct. App. 2016) ("It is not necessary for purposes of this appeal to broadly classify all types of claims for attorney's fees, and we do not purport to do so."). Recognizing this, we clarify that our analysis here is confined to *contractual* attorney fees.

alone to . . . find the intention of the parties." *Health Serv. Ctrs., Inc. v. Boddy*, 359 S.E.2d 659, 661 (Ga. 1987).

¶34 Accordingly, we interpret the attorney fee provision as we would any other contractual provision, by looking to the language of the contract. Here, the PMA specifies that:

> In any action or proceeding *between Property Manager and the Tenants in Common* arising from or relating to this Agreement or the enforcement or interpretation hereof, the party prevailing in such action or proceeding shall be entitled to recover from the other party all of its reasonable attorneys' fees and other costs and expenses of the action or proceeding.

(Emphasis added.)

¶35 No one has argued that these terms are unclear or ambiguous. As the district court noted in its order awarding attorney fees, "The above-fee provisions . . . do not permit attorneys' fees for all disputes related to the agreement[], rather such fees are limited to disputes between the tenants in common and the Property Manager . . . ." It is undisputed that Barberry is included in the "Tenants in Common" referenced in the PMA. And in its order awarding attorney fees, the district court ruled that Cottonwood could enforce the attorney fee provision as the property manager because Barberry had alleged in its complaint that Cottonwood was the property manager under the PMA "and sued for breach thereof," and Georgia's judicial admissions rule prohibited Barberry from taking a contrary position.[8]

¶36 We agree that Georgia's judicial admissions rule is determinative. It provides that, "[w]ithout offering the same in evidence, either party may avail himself or herself of allegations or admissions made in the pleadings of the other." GA. CODE ANN. § 24-8-821. In other words, a party's allegations or admissions in

---

[8] We note that the judicial admissions rule is presumably one of procedure. So Utah law should apply on this point. *See Federated Cap. Corp. v. Libby*, 2016 UT 41, ¶ 13, 384 P.3d 221. But because both parties briefed and argued this under Georgia law, we will apply Georgia law in order to address their arguments. This does not mean they were correct in resorting to Georgia law with regard to this matter.

its pleadings are considered "conclusive of the facts contained therein" if they are not withdrawn. *Georgia-Pac., LLC v. Fields*, 748 S.E.2d 407, 410 (Ga. 2013). Only factual allegations, not opinions or legal conclusions, may be deemed judicial admissions. *See id.*

¶37 And while Georgia's Civil Practice Act permits pleadings in the alternative, that "does not change the rule of evidence that a party is bound by its judicial admissions." *Loney v. Primerica Life Ins. Co.*, 499 S.E.2d 385, 387 (Ga. Ct. App. 1998) (citation omitted). So, "a party should beware of the evidentiary effect of alternative pleadings," *Ditch v. Royal Indem. Co.*, 422 S.E.2d 868, 869 (Ga. Ct. App. 1992), because "[w]here the pleading is inconsistent, the admission, not the denial, prevails." *Johnson v. Daniel*, 219 S.E.2d 579, 581 (Ga. Ct. App. 1975).

¶38 Thus, under Georgia's judicial admissions rule, Barberry is bound by the factual allegations made in its complaint—specifically, that Daymark secretly sold the PMA to Cottonwood and, as assignee of the PMA, Cottonwood took over Daymark's role as property manager under the agreement. It does not matter that Barberry alleged in the alternative that Cottonwood may have merely interfered with the PMA or aided and abetted Daymark's breach of fiduciary duty. Simply put, although Barberry pleaded various claims in the alternative, this does not change the fact that Barberry is bound by its unwithdrawn factual allegations that Cottonwood was the property manager under the PMA. And Barberry has made no argument that it did withdraw these allegations. Accordingly, they are binding judicial admissions under Georgia law and the district court was entitled to hold Barberry to them for purposes of ruling upon Cottonwood's motion for attorney fees.

¶39 Barberry attacks this conclusion for two reasons.[9] First, it argues that "the same rule precludes Cottonwood from

---

[9] Barberry also claims that under *Dillard-Winecoff, LLC v. IBF Participating Income Fund*, 552 S.E.2d 523, 525 (Ga. Ct. App. 2001), Cottonwood is judicially estopped from claiming to be the property manager under the PMA. But this appears to misunderstand the judicial estoppel rule as interpreted by Georgia courts. "Judicial estoppel is a federal doctrine that precludes a party from asserting a position in a judicial proceeding which is inconsistent with a *position previously successfully asserted* by it in a prior proceeding." *Id.* (citations

(continued . . .)

contradicting their own pleading that they were not the Property Manager." But that is incorrect. Georgia's judicial admissions rule applies only to "allegations or admissions made in *pleadings*." GA. CODE ANN. § 24-8-821 (emphasis added). Cottonwood's motion to dismiss, in which it argued it was not the property manager under the PMA, is not a pleading under Georgia law. "[A] motion is not a pleading; pleadings are defined as seven specific filings, including a 'complaint' and an 'answer.'" *Chandler v. Opensided MRI of Atlanta, LLC*, 682 S.E.2d 165, 170 n.5 (Ga. Ct. App. 2009) (citation omitted). Accordingly, although Cottonwood can rely on factual allegations Barberry made in its complaint, Barberry cannot rely upon arguments Cottonwood made in its motion to dismiss.

¶40 Second, Barberry contends that the judicial admissions rule does not control here because the district court decided this factual issue on the merits. Barberry is correct that in Georgia, if a judicial admission is considered and determined on the merits, the judicial admissions rule is no longer determinative. *See Stephens v. Tate*, 249 S.E.2d 92, 94 (Ga. Ct. App. 1978) ("The order granting summary judgment shows that the issue was considered and determined on its merits by the trial court. 'Therefore, we do not consider the (answer) to be an admission in judicio that barred the applicant from showing to the contrary.'" (quoting *Summerlot v. Crain-Daly Volkswagen, Inc.*, 233 S.E.2d 749, 750 (Ga. 1977))). As we have explained, Georgia courts generally will not allow parties to disprove judicial admissions made in their pleadings unless the admissions are withdrawn. *See also Walker v. Jack Eckerd Corp.*, 434 S.E.2d 63, 66 (Ga. Ct. App. 1993), *superseded on other grounds by statute as stated in Allen v. Kroger Co.*, 2018 WL 6729646, at *3 (M.D. Ga. 2018). However, "if the trial court admits . . . conflicting evidence, and either the court (e.g. when ruling on a motion for summary judgment) or the jury (when reaching its verdict) considers the conflicting evidence *on the merits,* the pleadings at that point become amended to conform to such evidence" because

_____

omitted) (internal quotation marks omitted). There are two prerequisites to this doctrine: "(1) prior assertion of an inconsistent position in another judicial proceeding; and (2) successful assertion of the previous inconsistent position." *Id.* These prerequisites are not met, as Barberry has identified no prior judicial proceeding in which Cottonwood successfully asserted that it was not the property manager under the PMA.

the court is considered to have "tacitly permitted" the party to withdraw its admission. *Id.* "Basically, the rule vests the trial court with discretion to determine whether an admission of fact made in pleadings should be withdrawn, thereby allowing the pleadings to be amended by conflicting evidence admitted and considered on the merits." *Id.*

¶41  Barberry asserts that the district court found on the merits that Cottonwood was not the property manager under the PMA but instead was engaged as a subcontractor to sub-manage the property. And it contends that it is therefore not bound by its contrary allegations. We disagree.

¶42 For Barberry to prevail on this argument, it must persuade us that the district court considered this factual dispute on the merits, thereby tacitly allowing Barberry to withdraw the relevant allegations and amending the complaint accordingly. While the record is not entirely clear, we conclude the district court did not do this.

¶43  We make an initial observation that it is unusual for this question to arise at all in this procedural posture. The motion before the district court was a motion to dismiss under civil rule 12(b)(6). It is foundational that when ruling on such a motion, a district court must take the factual allegations in the complaint as true. *See* UTAH R. CIV. P. 12(b)(6);[10] *Hudgens v. Prosper, Inc.*, 2010 UT 68, ¶ 14, 243 P.3d 1275 ("A motion to dismiss should be granted only if, 'assuming the truth of the allegations in the complaint and drawing all reasonable inferences therefrom in the light most favorable to the plaintiff, it is clear that the plaintiff is not entitled to relief.'" (citation omitted)). The district court is not permitted to consider dueling evidence or make findings on disputed facts. *See Oakwood Village LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 12, 104 P.3d 1226 ("If a court does not exclude material outside the pleadings and fails to convert a rule 12(b)(6) motion to one for summary judgment, it is reversible error . . . ."); *Alvarez v. Galetka*, 933 P.2d 987, 989 (Utah 1997) ("Rule 12(b)(6) concerns the sufficiency of the pleadings, not the underlying merits of a particular case."). So normally, a question as to whether a court

---

[10] We apply Utah law to our 12(b)(6) analysis because it is a rule of procedure. The district court and the court of appeals also (correctly) analyzed the application of 12(b)(6) under Utah law.

considered disputed facts on the merits when ruling upon a 12(b)(6) motion should be easily answered in the negative, unless the court erred.

¶44 But here, Barberry has identified a few statements in the order of dismissal that suggest the court may not have taken the facts in the complaint as true. So we analyze Barberry's argument that the district court considered the relevant factual dispute on the merits in contravention of rule 12(b)(6).

¶45 A review of the order of dismissal reveals that the court did not so much intend to resolve factual disputes on the merits but to construe the two contracts before it—the PMA and the sub-property management agreement. We acknowledge that this was problematic because the sub-property management agreement was attached only to Cottonwood's motion, not Barberry's complaint. However, Barberry was heard on this issue in the court of appeals. *1600 Barberry Lane 8 LLC v. Cottonwood Residential OP LP*, 2019 UT App 146, ¶ 8 n.5, 449 P.3d 949.[11] And the question

---

[11] In the court of appeals, Barberry argued that in viewing Cottonwood as a subcontractor rather than an assignee of the contract, "the district court improperly considered the [sub-property management] contract between Daymark and Cottonwood without converting the motion to dismiss to one for summary judgment." *1600 Barberry Lane 8 LLC v. Cottonwood Residential OP LP*, 2019 UT App 146, ¶ 3 n.4, 456 P.3d 949. The court of appeals avoided this issue and affirmed the district court on its other basis for dismissal. The court of appeals explained,

> [Barberry] allege[s] that Daymark sold the Agreement to Cottonwood and that Cottonwood thereby "subsumed from [Daymark] all of their obligations in the [Agreement]." In ruling on the motion to dismiss, the district court considered the contract between Daymark and Cottonwood, which [Barberry] did not attach to or expressly reference in their pleading, and concluded that Daymark did not assign the Agreement to Cottonwood but rather engaged Cottonwood as a subcontractor. [Barberry] allege[s] that the district court improperly considered the contract between Daymark and Cottonwood without converting the motion to dismiss to one for summary judgment. . . . We need

(continued . . .)

before us is solely whether the court rejected the relevant factual allegations on the merits.

¶46 Barberry relies upon the following passages in the district court's order of dismissal to argue that it did. First, when concluding that Barberry had not stated a claim for breach of contract, the court stated that

> The Sub-Property Management Agreement shows that [Daymark] and [Cottonwood] entered into the Sub-Property Management Agreement whereby [Daymark] retained [Cottonwood] as a subcontractor to sub-manage the Property. Only [Cottonwood] and [Daymark] (not Plaintiffs) are parties to the Sub-Property Management Agreement.

But the court then provided an additional basis for dismissal that accepted the allegations in the complaint and interpreted the PMA, stating, "Indeed, even if [Cottonwood] could be deemed a party to the PMA, Plaintiffs' allegation that [Cottonwood] purportedly breached the PMA by charging property and asset management fees in excess of fair value lacks merit" and "the Amended Complaint alleges no facts supporting such a claim, and the language of the PMA contradicts Plaintiffs' allegations."

¶47 Further, when determining Barberry had failed to allege that there was a fiduciary relationship between the parties, the district court said that Cottonwood was "not the Property Manager; it is a subcontractor of the Property Manager." However, the court provided additional bases for dismissing the fiduciary duty claims that relied on the allegations in the complaint and the terms of the PMA: it stated, "[Barberry's] claim that the PMAS were assigned to [Cottonwood] without [Barberry's] consent is meritless because [Barberry] admit[s] that [it] consented to the alleged assignment," and "as a matter of

---

not decide whether this was error, because we affirm the district court without regard to the contract between Daymark and Cottonwood. *In other words, our analysis does not depend on whether Cottonwood was an assignee of or a subcontractor under the Agreement.*

*Id.* (third and fourth alterations in original) (emphasis added).

Georgia law, neither party is a fiduciary of the other because the parties contractually agreed that their relationship was not fiduciary in nature."

¶48 Nowhere in the order does the district court purport to weigh evidence or resolve factual disputes. Rather, it noted the correct legal standard in the beginning of its order.[12] And throughout, the district court primarily interpreted the PMA and applied Georgia law to the facts alleged in the complaint. The portions of the order relied upon by Barberry are the result not of factfinding but of the court interpreting the sub-property management agreement. This was problematic because that agreement was not part of the complaint. But while this indicates that the court made a mistake (which the court of appeals concluded was not determinative due to the district court's other grounds for dismissal, *see id.* ¶ 3 n.4), it does not mean that the district court tacitly permitted Barberry to withdraw its factual allegations by resolving disputed facts on the merits. This is further supported by the fact that in ruling on Cottonwood's motion for attorney fees, the district court held Barberry to these allegations as judicial admissions.[13]

¶49 Barberry has not provided any other reason that Georgia's judicial admissions rule should not apply here. Accordingly, we affirm the district court's determination that Cottonwood is entitled to enforce the PMA's attorney fee provision under Georgia law.

---

[12] The court stated Cottonwood was arguing that "the allegations in [Barberry's] Amended Complaint, taken as true, fail to state any claims against [Cottonwood]."

[13] When Barberry tried to argue that the district court had determined this factual issue, the court disclaimed any intention of doing so. At oral argument during the hearing on attorney fees, counsel for Barberry stated, "Your honor decided the case on the basis of a subcontract that [Cottonwood] attached to a pleading that they said meant they were not the property manager and therefore, had no rights pursuant to the property management agreement." The court responded that it "may have made a mistake in going that far without seeing the whole picture on this attorney's fees issue."

### III. THE REASONABILITY OF THE AWARD AMOUNT

¶50 Barberry next argues that, even if the district court did not err in its award of attorney fees, the fees awarded were unreasonable. But Barberry has inadequately briefed this issue.

¶51 In its original motion for attorney fees, Cottonwood claimed it had paid over $300,000 in fees to defend itself in the California and Utah courts. Before ruling on the motion, the district court informed the parties that it would not consider any fees or costs incurred in the California litigation. So Cottonwood revised its request, claiming a reduced $94,836.62 in attorney fees and costs. After briefing and oral argument on the matter, the district court granted Cottonwood's revised fee request in full.

¶52 Barberry argues that the amount awarded by the court is unreasonable. But its briefing on this issue consists of itemizing the billings submitted by Cottonwood and stating in conclusory fashion that "it was unreasonable to reward Defendants an additional $41,532.39 for unsuccessfully seeking and defending the original fee award." Barberry does not reference any legal support for this argument or provide any analysis. And Barberry fails to mention the governing abuse-of-discretion standard or apply it to the district court's decision.

¶53 An appellant carries the burden of persuasion to convince the reviewing court that the district court erred in its decision. And "an appellant who fails to adequately brief an issue 'will almost certainly fail to carry its burden of persuasion on appeal.'" *Bank of Am. v. Adamson*, 2017 UT 2, ¶ 12, 391 P.3d 196 (citation omitted). Although there is no bright-line rule that defines adequate briefing, a party must, at minimum, cite to applicable law and then apply the law to the facts. *See id.* ¶ 11; *see also* UTAH R. APP. P. 24(a)(8) ("The argument must explain, with reasoned analysis supported by citations to legal authority and the record, why the party should prevail on appeal.").

¶54 Barberry has failed to do so here. It has made conclusory statements that the fees awarded by the district court are unreasonable but has provided no argument or analysis as to why that is so. And it has failed to even apply the abuse-of-discretion standard of review. "While failure to cite to pertinent authority may not always render an issue inadequately briefed, it does so when the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court." *State v. Thomas*, 961 P.2d 299, 305 (Utah 1998). We decline to shoulder that burden.

¶55 Barberry failed to adequately brief this issue and has not met its burden of persuasion. Accordingly, we do not disturb the amount of the district court's fee award.

## CONCLUSION

¶56 We hold that the matter of contractual attorney fees is substantive for choice of law purposes. Applying Georgia law, we conclude that Barberry has not shown the district court erred in awarding Cottonwood attorney fees. And we do not disturb the amount of the award because Barberry failed to adequately brief the issue and accordingly did not persuade us that the award was unreasonable. Finally, Cottonwood requests an award of costs pursuant to rule 34 of the Utah Rules of Appellate Procedure. Because Cottonwood is the prevailing party on appeal, we grant its request and award costs. *See* UTAH R. APP. P. 34(a).

———————