**2021 UT App 72**

# THE UTAH COURT OF APPEALS

ARLINGTON MANAGEMENT ASSOCIATES, INC.,
Appellant,
*v.*
UROLOGY CLINIC OF UTAH VALLEY, LLC,
Appellee.

Opinion
No. 20190503-CA
Filed July 9, 2021

Fourth District Court, Provo Department
The Honorable Thomas Low
No. 160401231

R. Stephen Marshall and Kevin Paulsen,
Attorneys for Appellant

Rodney R. Parker and Todd E. Zenger,
Attorneys for Appellee

JUDGE DIANA HAGEN authored this Opinion, in which
JUDGES JILL M. POHLMAN and RYAN M. HARRIS concurred.

HAGEN, Judge:

¶1 Arlington Management Associates Inc. (Arlington) appeals the district court's order granting summary judgment to Urology Clinic of Utah Valley LLC (the Clinic). Arlington sued for breach of contract, alleging that the Clinic had failed to pay for management services that Arlington had provided pursuant to the parties' written management agreement (the Management Agreement). The Clinic moved for summary judgment, in part, because Arlington had failed to withdraw its compensation from the Clinic's operating account on a monthly basis as contemplated by the contract. In response, Arlington claimed that the Clinic had modified the contract by asking Arlington not to withdraw its monthly compensation and promising to pay "at

a later date." Accepting these facts as true for purposes of the motion, the district court ruled that the Clinic was nonetheless entitled to judgment for two reasons: (1) Arlington was the first to breach the contract by failing to either pay itself monthly or reserve the payment as contemplated by the Management Agreement, and (2) the Clinic's promise to pay at a later date was not specific enough to be enforced. Arlington now appeals the district court's order granting summary judgment to the Clinic.

¶2     Arlington also appeals the district court's denial of its cross-motion for partial summary judgment. The court denied that motion "for the same reasons that [the Clinic's] motion for summary judgment [was] granted" and because there were "several disputes of material fact."

¶3     Because issues of material fact precluded the district court from granting either the Clinic's or Arlington's motion for summary judgment, we vacate the district court's order and remand for further proceedings consistent with this opinion.


BACKGROUND

¶4     The Clinic and Arlington entered into the Management Agreement in 2009. At that time, the Clinic's executive manager, Dr. Stewart Landau, and Arlington's president, Rebecca Landau, were married. Dr. Landau signed the agreement on behalf of the Clinic,[1] and Ms. Landau signed the agreement on behalf of Arlington. Under the agreement, Arlington would provide the

---

1. In opposition to Arlington's cross-motion for partial summary judgment, the Clinic disputed whether Dr. Landau had authority to enter into the Management Agreement on behalf of the Clinic. But for purposes of its own motion for summary judgment, the Clinic assumed the existence of a contract between itself and Arlington.

Clinic with management services in exchange for monthly payments of $10,000. Relevant to this appeal, the agreement contained the following provisions:

> Section 6.3 <u>Expenditures</u>. [The Clinic] shall establish a separate bank account (the "[O]perating Account") for the Practice, on which [Arlington] or its designated employee(s) shall have exclusive signature authority. The funds in the Operating Account shall be, and shall remain at all times, [the Clinic's] property. Within twenty (20) working days after the end of each month, [Arlington] shall submit to [the Clinic] an accounting of the expenditures for the previous calendar month. From the Operating Account, [Arlington] shall pay or reserve each month the following items:
>
> (a) *Operating Expenses*. All operating expenses of the Practice including, but not limited to, all amounts for salaries and wages, employee fringe benefits, payroll taxes, supplies, materials, repairs, maintenance, all utility charges, real property taxes and assessments on the Practice and insurance and bond premiums with respect to the operations of the Practice.
>
> (b) *Management Fees*. All management fees owed to [Arlington] pursuant to this Agreement.
>
> . . . .
>
> Section 12.2 <u>Unpaid Sums</u>. On termination of this Agreement, [the Clinic] promptly shall pay to [Arlington] any unpaid sums due under this Agreement, prorated through the effective date of such termination.

¶5 For the first four months after signing the Management Agreement, Arlington paid itself $10,000 per month from the operating account. Thereafter, Arlington stopped withdrawing its compensation from the operating account but accrued the Clinic's obligation to Arlington on the Clinic's accounting records each month. Thus, after the first four months, Arlington did not receive any payment from the Clinic. Years later, the Clinic terminated the agreement but refused to pay Arlington for the months Arlington received no payment for its services. Arlington then filed suit against the Clinic for breach of contract, alleging that Arlington was entitled to the remaining payments.

¶6 The Clinic moved for summary judgment on the grounds that Arlington had caused its own damages by not withdrawing its monthly payment, failed to mitigate damages by not reserving the funds, and waived the Clinic's obligation to pay Arlington for its services. In opposition to the Clinic's motion, Arlington argued that the parties had orally modified the terms of the Management Agreement. In support, it submitted a declaration from Ms. Landau swearing that Dr. Landau, on behalf of the Clinic, had "approached [her] and requested that Arlington not withdraw its monthly compensation" but promised that "Arlington would receive full compensation for its provision of management services at a later date." For purposes of the motion only, the Clinic did not contest these facts but argued that the oral modification failed as a matter of law.

¶7 After filing its opposition, Arlington filed its own motion for partial summary judgment on its breach of contract claim. The Clinic opposed the motion, arguing that Arlington had no right to enforce the agreement because it was the first to breach. Specifically, the Clinic argued that Arlington had failed to provide exclusive management services to the Clinic as required by the Management Agreement.

¶8 The district court granted the Clinic's motion for summary judgment, concluding that the asserted oral modification "lacked enforceable terms regarding the time for payment to Arlington" and therefore could not operate to modify the Management Agreement. It also concluded that Arlington had "breached the agreement first" when it failed to "pay itself as directed to do within the agreement" and "failed to set aside money to pay itself later." Based on these conclusions, the court determined that "[a]s the party that breached first, Arlington [could not] sue for enforcement of the very term it breached." The court denied Arlington's motion for partial summary judgment for the same reasons but also ruled, in the alternative, that "several disputes of material fact would have prevented the court from granting [Arlington's] motion for summary judgment, including the issue of whether Arlington actually did perform its duties under the Management Agreement." The court then dismissed Arlington's complaint in its entirety and entered final judgment in favor of the Clinic.

ISSUES AND STANDARD OF REVIEW

¶9 Arlington appeals the district court's ruling granting summary judgment in favor of the Clinic and denying Arlington's motion for partial summary judgment on its breach of contract claim. In reviewing a district court's summary judgment ruling, we review its "legal conclusions and ultimate grant or denial of summary judgment for correctness." *Cochegrus v. Herriman City*, 2020 UT 14, ¶ 14, 462 P.3d 357 (cleaned up). We review "the facts and all reasonable inferences in a light most favorable to the party opposing the motion." *Rusk v. Harstad*, 2017 UT App 27, ¶ 3, 393 P.3d 341 (per curiam) (cleaned up).

ANALYSIS

¶10 Neither party is entitled to summary judgment in this case. "Summary judgment is only appropriate 'if the moving

party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.'" *Arnold v. Grigsby*, 2018 UT 14, ¶ 8, 417 P.3d 606 (quoting Utah R. Civ. P. 56(a)). Accordingly, the "district court must deny a motion for summary judgment if it finds that there is a genuine issue of material fact that bears on its legal determination or if it finds, as a matter of law based on the undisputed facts, that the moving party is not entitled to a legal ruling in its favor." *Normandeau v. Hanson Equip. Inc.*, 2009 UT 44, ¶ 9, 215 P.3d 152. To determine whether a genuine factual dispute exists, we ask "whether reasonable jurors, properly instructed, would be able to come to only one conclusion, or if they might come to different conclusions, thereby making summary judgment inappropriate." *Cochegrus*, 2020 UT 14, ¶ 14 (cleaned up).

¶11 The district court granted the Clinic's motion for summary judgment and denied Arlington's cross-motion for partial summary judgment. We first address the Clinic's motion for summary judgment and reverse the court's determination that the Clinic was entitled to judgment as a matter of law. We then address the court's denial of Arlington's cross-motion and affirm the court's ruling that genuine issues of material fact precluded summary judgment on Arlington's breach of contract claim.

## I. The Clinic's Motion for Summary Judgment

¶12 Arlington argues that the district court erred in granting the Clinic's motion for summary judgment. For purposes of the motion, the court assumed that the oral modification occurred but concluded that the Clinic was nonetheless entitled to judgment as a matter of law for two reasons relevant to this appeal. First, the court ruled that Arlington breached the Management Agreement by failing to either pay itself or set aside the amount owed on a monthly basis and that Arlington's first breach excused the Clinic's non-performance. Second, the court concluded that, even if the alleged oral modification of the

agreement excused Arlington from making monthly withdrawals, the terms of that modified agreement were not specific enough to be enforceable.[2] We disagree with the court's reasoning on both points.

¶13    First, the Clinic is not entitled to judgment as a matter of law based on the first breach rule. "Under the first breach rule[,] a party first guilty of a substantial or material breach of contract . . . can neither insist on performance by the other party nor maintain an action against the other party for a subsequent failure to perform." *CCD, LC v. Millsap*, 2005 UT 42, ¶ 29, 116 P.3d 366 (cleaned up). But whether "a party performed under a contract or breached a contract is a question of fact." *iDrive Logistics LLC v. IntegraCore LLC*, 2018 UT App 40, ¶ 43, 424 P.3d

---

2. The district court also appears to have partially based its ruling on Arlington's failure to allege facts relating to the oral modification in its complaint. Specifically, the court stated that Arlington's complaint "alleges the Management Agreement as the sole basis for [its] claims; there is no allegation of a separate oral agreement or oral terms that amend the Management Agreement." Arlington's breach of contract claim was based on the Clinic's promise in the Management Agreement to pay Arlington $10,000 per month for its services. The oral modification to delay those payments did not become relevant until the Clinic argued that, by failing to pay itself as required in the Management Agreement, Arlington had caused its own damages, failed to mitigate its damages, or waived its right to be paid. But Arlington had no obligation to plead facts as "an anticipatory response to an expected affirmative defense." *See Bright v. Sorensen*, 2020 UT 18, ¶ 38, 463 P.3d 626. In any event, the Clinic assumes that "the trial court did not base its summary judgment on that skeptical view" of Arlington's complaint, and does not advance it as an alternative basis for affirmance on appeal.

970. And whether such a breach is material is also a question of fact. *See Cross v. Olsen*, 2013 UT App 135, ¶ 29, 303 P.3d 1030.

¶14    The district court ruled that the Clinic was excused from performing under the Management Agreement because Arlington had breached its duty under Section 6.3(b) to either "pay or reserve each month . . . [a]ll management fees owed to" Arlington. It was undisputed, for purposes of summary judgment only, that Arlington agreed to the Clinic's request that it "not withdraw its monthly compensation" from the operating account in exchange for a promise that it would be paid at a later date. It was also undisputed that Arlington did not withdraw its compensation from the Clinic's operating account but accrued the Clinic's obligation to Arlington on the Clinic's accounting records each month. Based on these limited undisputed facts, we cannot conclude that the Clinic is entitled to judgment as a matter of law.

¶15    As an initial matter, there are genuine issues of material fact as to whether the oral modification excused Arlington's failure to pay itself or, at a minimum, to withdraw the funds necessary to cover an eventual payment. A reasonable jury might conclude, as the district court did, that Arlington had a duty to reserve funds that was not modified by the oral agreement. But a reasonable jury could also conclude that the parties intended that by forgoing payment, Arlington would leave the funds in the operating account for the Clinic's use.

¶16    Even if the factfinder were to conclude at trial that Arlington did breach Section 6.3 by failing to either pay itself or reserve funds, a question of fact remains as to whether that breach was material. Arlington argues that the alleged breach "was at most a technical breach, not a material one" that excused the Clinic's performance because it "only affected the timing of payment" and did not go "to the main purpose or object of the parties in entering into the agreement." Under the first breach rule, only a material breach that "goes to the heart of the contract

itself" will justify nonperformance by the other party. *See Cross*, 2013 UT App 135, ¶ 28. Materiality "turns on a number of factors" and should "ordinarily be resolved by the fact finder." *Id.* ¶¶ 28–29. "Summary judgment is appropriate on such factual questions when they fall on either end of a factual continuum: when there could be no reasonable difference of opinion, or when the facts are so tenuous, vague, or insufficiently established that determining the factual issue becomes completely speculative." *Id.* ¶ 29 (cleaned up). Here, the district court did not address the materiality requirement. Without such an analysis examining the "issue through the lens of the foregoing standards," the district court "erred in granting summary judgment on the factual question of material breach." *See id.* ¶ 30.[3]

¶17 Second, we disagree with the district court's conclusion that the asserted oral modification, as described by Ms. Landau, was too non-specific to be enforceable. "It is well-settled law that the parties to a contract may, by mutual consent, alter all or *any portion* of that contract by agreeing upon a modification thereof." *Rapp v. Mountain States Tel. & Tel. Co.*, 606 P.2d 1189, 1191 (Utah 1980) (emphasis added). The parties acknowledge that a contract may be modified by an oral agreement even if, as in this case, the contract says it can be modified only in writing. *See, e.g., R.T. Nielson Co. v. Cook*, 2002 UT 11, ¶ 13 n.4, 40 P.3d 1119. The modified terms "govern the rights and obligations of the parties under the contract, and any pre-modification contractual rights

---

3. We do not mean to suggest that materiality is the only factual issue that remains unresolved. For instance, there may be questions of fact as to whether the Clinic is equitably estopped from raising the first breach rule as a defense. *See State Dep't of Hum. Servs. ex rel. Parker v. Irizarry*, 945 P.2d 676, 678 (Utah 1997) (stating that "the issue of whether equitable estoppel has been proven is a classic mixed question of fact and law").

which conflict with the terms of the contract as modified must be deemed waived or excused." *Rapp*, 606 P.2d at 1191.

¶18 For purposes of the Clinic's motion for summary judgment, the district court accepted as true that the Clinic asked Arlington to "not withdraw its monthly compensation" as required by Section 6.3 of the Management Agreement but that the Clinic still promised that "Arlington would receive full compensation for its provision of management services at a later date." However, the court ruled that the oral modification was unenforceable because it "lacked enforceable terms regarding the time for payment to Arlington." We disagree.

¶19 A modification can affect "the provisions which were discussed [as part of the modification], but not [the] provisions which were ignored." *See Mann v. American W. Life Ins. Co.*, 586 P.2d 461, 464 (Utah 1978). The limited facts on the record at the summary judgment stage do not establish, as a matter of law, that the parties' alleged oral modification altered or otherwise addressed Section 12.2 of the Management Agreement. That provision states, "On termination of this Agreement, [the Clinic] promptly shall pay to [Arlington] any unpaid sums due under this Agreement, prorated through the effective date of such termination." Although the "later date" for payment was not specified in the oral modification, Section 12.2 of the Management Agreement provided a backstop, indicating that the Clinic could not postpone its payment obligation beyond the date of termination. Whether the oral modification waived or excused Section 12.2 cannot be determined on this summary judgment record.

¶20 Even setting Section 12.2 aside, a reasonable time frame for repayment may be implied. "An implied reasonable time limit is as much a part of the agreement as those terms that are expressed, and it has long been recognized that if a contract fails to specify a time of performance the law implies that it shall be done within a reasonable time under the circumstances."

*NetDictation LLC v. Rice*, 2019 UT App 198, ¶ 27, 455 P.3d 625 (cleaned up). As such, failure to specify a time for repayment at a later date did not render the oral modification unenforceable as a matter of law. Therefore, we vacate the entry of summary judgment in the Clinic's favor.

## II. Arlington's Motion for Summary Judgment

¶21   Having persuaded us that the district court erred in granting the Clinic's motion for summary judgment, Arlington urges us to go one step further and reverse the court's denial of Arlington's cross-motion for summary judgment on its breach of contract claim. The district court principally denied Arlington's motion "for the same reasons that [the Clinic's] motion for summary judgment was granted." But the court also ruled, in the alternative, that there were "several disputes of material fact that would have prevented the court from granting [Arlington's] motion for summary judgment, including the issue of whether Arlington actually did perform its duties under the Management Agreement."

¶22   We agree with the district court that questions of material fact preclude summary judgment on Arlington's contract claim. In addition to those disputed facts already identified in Part I of this opinion, the parties dispute whether Arlington performed its duties under the Management Agreement, a necessary element of Arlington's breach of contract claim. *See Carmichael v. Higginson*, 2017 UT App 139, ¶ 10 n.5, 402 P.3d 146 (listing elements of a breach of contract claim, including "performance by the party seeking recovery" (cleaned up)). Ms. Landau's declaration broadly asserted that Arlington had "timely performed all obligations and duties that it was required to perform under the Management Agreement." As further factual support for this assertion, Arlington pointed to Ms. Landau's deposition testimony that Arlington provided services "regarding lots of financial aspect[s] of insurance and employees, etc.," and that Arlington "was also involved in

communications with [the Clinic's] billing professionals and 'a myriad of things.'" In opposing Arlington's motion, the Clinic disputed that Arlington had performed the "promised services in Articles 2, 3, 4, 5, and 6" of the Management Agreement and offered Dr. Landau's declaration that Arlington had failed to "regularly attend[] or participate[] in the [Clinic's] administrative meetings," that he personally provided oversight on accounting matters "many times," and that he and others performed the management duties that Arlington had agreed to exclusively provide.

¶23   Arlington argues that the Clinic did not set forth specific facts demonstrating a genuine dispute for trial because it "failed to cite a single instance where Arlington failed to perform as anticipated under the [Management] Agreement." But the facts set forth by the Clinic were at least as specific as the evidence offered by Arlington, the moving party who would bear the burden of establishing its breach of contract claim at trial. *See Salo v. Tyler*, 2018 UT 7, ¶ 26, 417 P.3d 581 ("A movant who seeks summary judgment on a claim on which it will bear the burden of persuasion at trial cannot seek summary judgment without producing affirmative evidence in support of the essential elements of its claim."). The limited evidence regarding Arlington's performance did not establish that no genuine issue of material fact remained for trial. Therefore, the district court correctly denied Arlington's cross-motion for partial summary judgment on that basis.

## CONCLUSION

¶24   Issues of material fact preclude summary judgment in favor of either party. Accordingly, we vacate the district court's ruling granting summary judgment for the Clinic and affirm the court's ruling denying partial summary judgment for Arlington. We remand for further proceedings consistent with this opinion.