**2022 UT App 115**

## THE UTAH COURT OF APPEALS

iDRIVE LOGISTICS LLC,
Appellee,
*v.*
ADAGIO TEAS INC.,
Appellant.

Opinion
No. 20210088-CA
Filed October 6, 2022

Fourth District Court, Provo Department
The Honorable Christine S. Johnson
No. 190400543

Troy L. Booher, Dick J. Baldwin, Taylor Webb, and
Matthew G. Bagley, Attorneys for Appellant

David R. Parkinson and Ronald F. Price, Attorneys
for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGE GREGORY K. ORME and JUSTICE JILL M. POHLMAN
concurred.[1]

MORTENSEN, Judge:

¶1     Adagio Teas Inc. (Adagio) contracted with iDrive Logistics
LLC (Kenco[2]) to assist it in obtaining reduced prices for shipping
costs. After a dispute over calculating Kenco's fee for services

---

1. Justice Jill M. Pohlman began her work on this case as a member
of the Utah Court of Appeals. She became a member of the Utah
Supreme Court thereafter and completed her work on the case
sitting by special assignment as authorized by law. *See generally*
Utah R. Jud. Admin. 3-108(4).

2. iDrive Logistics does business as "Kenco Parcel Solutions."

arose, the parties eventually settled the dispute regarding outstanding invoices. Adagio applied this same agreed-upon rate to four invoices moving forward. Litigation ensued when a dispute arose again. On a motion for summary judgment, the district court determined that the parties had modified their original agreement and that Adagio had breached that modified agreement. Adagio now appeals, and we affirm.

BACKGROUND[3]

¶2     To save money on shipping, Adagio entered into a contract (Contract) with Kenco in which Kenco would obtain shipping discounts for Adagio and Adagio would pay Kenco a portion of the resulting savings. However, after some time had passed, Adagio alleged that Kenco had been overbilling. The dispute boiled down to Adagio believing it would pay Kenco a portion of a 4% savings while Kenco believed Adagio would pay a portion of a 22% savings. The greater the savings, the greater Kenco's fee would be.[4] After Adagio informed Kenco of its belief that Kenco had been overbilling, the parties engaged in lengthy negotiations regarding the terms of the Contract and the appropriate billing rate.

---

3. "In reviewing a district court's grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party and recite the facts accordingly." *NetDictation LLC v. Rice*, 2019 UT App 198, n.1, 455 P.3d 625 (cleaned up).

4. According to Adagio, the manner of determining the proper rate was far more complex, but because the specifics of the complex calculations do not affect the outcome of this case, we follow the parties' example and provide basic percentages for simplicity's sake.

¶3     Ultimately, Kenco offered to meet Adagio in the middle and proposed to charge based on a 10.5% rate. Kenco stated, "We are willing to make this change *moving forward* as we value you as a customer" and indicated that it would even be willing to recalculate the most recent invoice using that new baseline. (Emphasis added.) Kenco continued, "We appreciate your concern and feel we have found a way to address [it] *moving forward*." (Emphasis added.) But Adagio was not satisfied and requested that any discount be applied retroactively. Kenco summarized these developments in an email:

> Originally when we discussed[,] I had offered as a goodwill gesture to adjust calculations from October *moving forward*. Last call I had offered to *extend* that to open invoices, you had asked to go to the beginning. You were not realizing at the time that meant back into 2016. You then asked for it *to include* 2017 shipments, not just open invoices. Rather than adjusting invoices[,] you agreed on last call that a Credit Memo would be acceptable. I have made a Credit Memo and I have included all shipments in 2017.

(Emphasis added.) (Cleaned up.) Kenco continued,

> I have accommodated what seemed to be the last area we were apart when we spoke, i.e. all 2017 shipments rather than open invoices. I would like to discuss when timing for getting caught up on the amounts still outstanding.

Adagio's response was short and to the point:

> Thank you for adjusting the pricing of all 2017 shipments. Will gladly speak tomorrow. . . . Appreciate your help[.]

¶4      Once Kenco offered to provide a credit toward past paid and unpaid invoices through 2017 (in essence reimbursing Adagio as if it had paid for those invoices based on a 10.5% rate), Adagio accepted the credit, and the dispute regarding invoices up to that point was resolved. Kenco then sent—and Adagio paid— four post-credit invoices based on the same 10.5% rate used to calculate the credit. But eventually, Adagio refused to pay any more invoices under this rate—largely because using the 10.5% rate actually increased Adagio's shipping costs—and litigation followed.

¶5      Adagio's acceptance of the credit and payment of invoices based on the 10.5% rate provided the crux of that litigation. The parties disagreed about (1) whether those actions demonstrated that the parties modified the Contract and (2) whether that modification applied to invoice calculations moving forward. Kenco asserted that Adagio's actions effectuated such a modification, but Adagio asserted that there was no modification and that it paid the four post-credit invoices only on a "trial basis, as a good-faith gesture to help [defuse] tensions between the parties." When the parties filed cross-motions for summary judgment, the district court reviewed the undisputed facts and explained, "In the present case, there is an objective manifestation of an intention to be bound by a verbal modification. That manifestation is documented in the email exchanges between the parties, as well as in Adagio's course of conduct thereafter." The court continued, "The expressed words and deeds of both parties thus demonstrate an intent to be bound, and an intent to waive any formal writing." The district court granted summary judgment in Kenco's favor, and Adagio now appeals.

## ISSUE AND STANDARD OF REVIEW

¶6      On appeal, Adagio contends that the court erred in granting Kenco's summary judgment motion in the face of "disputed issues of material fact as to the temporal scope of the

parties' agreement." We review a grant of "summary judgment for correctness, giving no deference to the [district] court's decision." *Bahr v. Imus*, 2011 UT 19, ¶ 15, 250 P.3d 56.

ANALYSIS

I. Summary Judgment

¶7     "Summary judgment is only appropriate if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Arlington Mgmt. Assocs., Inc. v. Urology Clinic of Utah Valley, LLC*, 2021 UT App 72, ¶ 10, 496 P.3d 719 (cleaned up). In determining if the district court properly granted summary judgment, the questions before us are twofold: (1) whether, "view[ing] the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party," there exists "no genuine dispute as to any material fact" about the parties modifying the Contract to calculate invoices using an adjusted rate moving forward after crediting the past invoices and (2) whether a modified contract existed under which Kenco can recover. *See iDrive Logistics LLC v. IntegraCore LLC*, 2018 UT App 40, ¶ 30, 424 P.3d 970 (cleaned up).

¶8     Adagio contends that the district court erred in granting summary judgment "by making inferences and viewing the facts in the light most favorable to Kenco, the moving party, as to whether the parties had a meeting of the minds about the temporal scope of their agreement." Specifically, Adagio asserts the court's conclusion that "the parties' course of conduct manifested their intention to be bound . . . was error" because "[t]he parties' contract specified that any modifications must be reduced to writing" and because inferences of contract modification based on any course of conduct ignore contrary evidence that Adagio intended that those additional invoices be

paid "only as a gesture of good will to ease tensions and on a limited trial basis." (Cleaned up.)

A.  Genuine Issue of Material Fact

1.  Delaware Law on Contract Modification

¶9  Under Delaware law,[5] contract formation depends on "whether a reasonable negotiator in the position of one asserting the existence of a contract would have concluded, in that setting, that the agreement reached constituted agreement on all of the terms that the parties themselves regarded as essential." *Leeds v. First Allied Conn. Corp.*, 521 A.2d 1095, 1097 (Del. Ch. 1986); *see also Sheets v. Quality Assured, Inc.*, No. N14C-03-010 VLM, 2014 WL 4941983, at *2 (Del. Super. Ct. Sept. 30, 2014) (stating that "[u]nder Delaware law, contract formation is a question of fact" and "[a] contract is formed when it is reasonable to conclude, based on the objective manifestations of assent and the surrounding circumstances," including the "course of dealing," "that the parties intended to be bound to their agreement on all essential terms"). "Any amendment to a contract, whether written or oral, relies on the presence of mutual assent . . . ." *Continental Ins. Co. v. Rutledge & Co.*, 750 A.2d 1219, 1232 (Del. Ch. 2000).

¶10  Delaware courts have explained the meaning of mutual assent: "Manifestation of mutual assent is an external or objective standard for interpreting conduct. A party manifests an intention to be bound if he believes or has reason to believe that the promisee will infer that intention from his words or conduct."

---

5. The parties agree that the "contract required the application of Delaware law" and that Delaware law governs the dispute. We thus apply Delaware law throughout this decision. *See 1600 Barberry Lane 8 LLC v. Cottonwood Residential O.P. LP*, 2021 UT 15, ¶ 31, 493 P.3d 580 ("[B]ecause the parties contracted to have [another state's] law govern the [contract], we must apply [that state's] law to determine whether the district court erred . . . .").

*Schaeffer v. Lockwood*, No. 2018-0926-MTZ, 2021 WL 5579050, at *16 (Del. Ch. Nov. 30, 2021) (cleaned up).[6] Further, "mutual assent means the external expression of intention as distinguished from undisclosed intention." *Id.* (cleaned up). Thus, a "court determines whether there has been mutual assent based upon the parties' expressed words and deeds as manifested at the time rather than by their after-the-fact professed subjective intent." *Id.* (cleaned up).

¶11 A "prohibition against amendment except by written change may be waived or modified in the same way in which any other provision of a written agreement may be waived or modified, including a change in the provisions of the written agreement by [the] course of conduct of the parties." *Pepsi-Cola Bottling Co. of Asbury Park v. Pepsico, Inc.*, 297 A.2d 28, 33 (Del. 1972). "[P]arties have a right to renounce or amend the agreement in any way they see fit and by any mode of expression they see fit. They may, by their conduct, substitute a new oral contract without a formal abrogation of the written agreement." *Id.*; *see also id.* (finding contracting parties' course of conduct could modify an agreement, even where original contract prohibited "any change except by written bilateral agreement"). And in that course of

---

6. Although *Schaeffer v. Lockwood*, No. 2018-0926-MTZ, 2021 WL 5579050 (Del. Ch. Nov. 30, 2021), was discussing contract formation, as opposed to contract modification, *see id.* at *15, we see that distinction as irrelevant because the elements of contract formation are identical to those for modification, *see Thomas v. Marta*, 1990 WL 35292, at *2 (Del. Super. Ct. Mar. 27, 1990) ("[T]o be effective as a modification, the new agreement must possess all of the elements necessary to form a contract. A modification requires the assent of both or all parties to the contract."); *see also* 17A Am. Jur. 2d *Contracts* § 496 (2022) ("A valid modification of a contract must satisfy all the criteria essential for a valid original contract, including offer, acceptance, and consideration." (cleaned up)).

conduct, "there must be a clear intention to alter the express terms," *Simon Prop. Group, LP v. Brighton Collectibles, LLC*, No. N21C-01-258 MMJ CCLD, 2021 WL 6058522, at *3 (Del. Super. Ct. Dec. 21, 2021)—that is, the expression of the intention must be one of "specificity and directness," *Continental Ins.*, 750 A.2d at 1230 (cleaned up).

2.     Kenco's and Adagio's Communications and Course of Conduct

¶12     As an initial matter, Adagio argues that any modification of the Contract had to be reduced to writing pursuant to one of the Contract's provisions: "This Agreement may not be waived, repealed, altered, or amended in whole or in part except by an instrument in writing executed by authorized representatives of each of the parties." But Adagio concedes that "this provision could be waived by course of conduct"—a point confirmed by Delaware law—all the while asserting that the parties' "course of conduct here was not sufficient to create a new governing contract."

¶13     As will be explained, the parties' communications and actions demonstrated the necessary intent to be bound, leaving no room for a genuine dispute of material fact. Specifically, the parties' emails and their subsequent course of conduct demonstrate indisputable mutual assent to modify the Contract.

¶14     Although Adagio initially rejected Kenco's offer to charge based on a 10.5% rate "*moving forward*," the email discussion demonstrates that it did so because it wanted that same rate to be applied retroactively. (Emphasis added.) Kenco stated that it had originally "offered as a goodwill gesture to adjust calculations from October *moving forward*" but that in later discussions, it had "offered to *extend* that [rate] to open invoices." (Emphasis added.) In response, Adagio said it wanted that rate to apply back "to [the] beginning," but it ultimately settled on the offer "includ[ing] 2017 shipments, not just open invoices." Thus, the new rate would

apply "moving forward," but the remaining negotiations—specifically those that followed Adagio's initial rejection of Kenco's offer—related only to how far back the new rate would extend. Adagio sought to have it apply to the beginning of the relationship, and the parties ultimately settled on applying the rate to all 2017 charges. Instead of recalculating the past invoices, Kenco provided a "Credit Memo" reflecting the amount provided under that agreement and finalized the email, stating, "I have accommodated what seemed to be the last area we were apart"—specifically, how far back the new rate would be applied, "i.e. all 2017 shipments rather than open invoices." Adagio responded not with a challenge to the description of events nor with any rejection of this summary, but with a simple acknowledgment: "Thank you for adjusting the pricing of all 2017 shipments. . . . Appreciate your help."

¶15   The parties' course of conduct confirms the same. Not only did Adagio accept the credit memo that came as part of that package deal, but it also continued to operate using that 10.5% rate by paying on four post-credit invoices based on the renegotiated rate (the same one used to calculate the credit). The undisputed fact that an offer was made and that the parties proceeded in lockstep with the terms of that offer constitutes evidence of the parties' assent to the modified contract terms. *See* 11 *Williston on Contracts* § 32:14 (4th ed. 2022) ("Even when the terms of a contract are clear and unambiguous, the subsequent conduct of the parties may evidence a modification of their contract. Accordingly, while their conduct may not be used to support an interpretation contrary to the plain meaning of the contract, it may nonetheless be used to prove the existence of a modification of the original contract terms.").

¶16   Thus, the parties' respective actions demonstrated a modification of the Contract, regardless of any requirement for that modification to be written. "[P]arties have a right to renounce or amend the agreement in any way they see fit and by any mode

of expression they see fit. They may, by their conduct, substitute a new oral contract without a formal abrogation of the written agreement"—and that is exactly what happened here. *See Pepsi-Cola Bottling Co. of Asbury Park v. Pepsico, Inc.*, 297 A.2d 28, 33 (Del. 1972). Moreover, the evidence demonstrating Adagio's and Kenco's assent is not ambiguous. The parties here agreed to a specific modification in their new agreement, and, at least for a time, the parties complied with those obligations.

¶17    In short, both the emails and the subsequent course of conduct (i.e., compliance with the agreement set forth in those emails) directly and specifically demonstrate the parties' intention to modify their agreement and the mutual assent to do so. *See Continental Ins. Co. v. Rutledge & Co.*, 750 A.2d 1219, 1230 (Del. Ch. 2000).

¶18    Adagio, however, resists this conclusion by contending that it paid the four new invoices applying the 10.5% rate only "as a gesture of good will . . . to see if the proposed new rate would result in an overall reduction of shipping costs." The evidence presented to support this assertion comes from Adagio's post hoc affidavits, in which it stated, among other things, that (1) it "did not feel that Kenco was being compensated correctly" but that it "made four payments" "to ease the tension that developed in [the] relationship"; (2) it "did not consider the issue finally resolved" because it did not consider the rate to be a final rate; (3) it "was willing to try paying the . . . rate on a limited or trial basis to see if it could get Adagio closer to where it needed to be in terms of its historical shipping costs, but [it] did not consider it a final rate or a final settlement of the matter"; (4) "[b]y applying the . . . rate on a limited or trial basis, [it] never intended to permanently pay Kenco more than what it was actually due under the Contract"; and (5) "it soon became clear that Kenco was still overbilling."

¶19    But "mutual assent means the external expression of intention as distinguished from undisclosed intention." *Schaeffer*

*v. Lockwood*, No. 2018-0926-MTZ, 2021 WL 5579050, at *16 (Del. Ch. Nov. 30, 2021) (cleaned up). Notably, under Delaware law, "[a]n overt manifestation of assent, not a subjective intent, controls the formation of a contract," and therefore, "[t]he unexpressed subjective intention of a party is . . . not relevant." *Acierno v. Worthy Bros. Pipeline Corp.*, 693 A.2d 1066, 1070 (Del. 1997); *see also Leeds v. First Allied Conn. Corp.*, 521 A.2d 1095, 1101 (Del. Ch. 1986) ("It is basic that overt manifestation of assent—not subjective intent—controls the formation of a contract; that the only intent of the parties to a contract which is essential is an intent to say the words or do the acts which constitute their manifestation of assent. Accordingly, our inquiry is the objective one: whether a reasonable [person] would, based upon the objective manifestation of assent and all of the surrounding circumstances, conclude that the parties intended to be bound by contract." (cleaned up)).

¶20 Thus, a "court determines whether there has been mutual assent based upon the parties' expressed words and deeds as manifested at the time rather than by their after-the-fact professed subjective intent." *Schaeffer*, 2021 WL 5579050, at *16 (cleaned up). "It is not material what induces the will. Otherwise stated, motive in the manifestation of assent is immaterial. There may be primary and secondary reasons or motives for a performance constituting manifestation of assent to an offer inviting acceptance by performance; and the chief reason or the prevailing motive need not necessarily be the offer itself." *Industrial Am., Inc. v. Fulton Indus., Inc.*, 285 A.2d 412, 415 (Del. 1971) (cleaned up). Accordingly, "not much weight should be given to the motives of an offeree." *Id.*

¶21 Here, Adagio's professed reason for paying the additional invoices after accepting the credit memo is nothing more than an "after-the-fact professed subjective intent." *See Schaeffer*, 2021 WL 5579050, at *16 (cleaned up). Adagio points to no record evidence—apart from its late-in-time affidavits—that any of these

intentions or understandings were expressed by Adagio to Kenco, and we are left with Delaware law's maxim that "the unexpressed subjective intention of a party is," indeed, "not relevant." *Acierno*, 693 A.2d at 1070. And here, Adagio's gratitude for Kenco's "extend[ing]" its offer of rate adjustment to "include" 2017 shipments are words that indicate mutual assent. Adagio's subsequent acceptance of the credit memo and payment of new invoices according to the adjusted rate were actions that manifested "an intention to be bound" such that Adagio should have known that Kenco would understand Adagio's conduct to indicate such an intention. *See Schaeffer*, 2021 WL 5579050, at *16 (cleaned up). Accordingly, there is no dispute of material fact underpinning the conclusion that mutual assent was present.

### B.    Judgment as a Matter of Law

¶22    Because we review a grant of "summary judgment for correctness, giving no deference to the [district] court's decision," *Bahr v. Imus*, 2011 UT 19, ¶ 15, 250 P.3d 56, we must determine if Kenco "is entitled to judgment as a matter of law," *Arlington Mgmt. Assocs., Inc. v. Urology Clinic of Utah Valley, LLC*, 2021 UT App 72, ¶ 10, 496 P.3d 719 (cleaned up); *see also Moore v. Deli Days, LLC*, No. N18C-09-044 SKR, 2020 WL 2892229, at *1 (Del. Super. Ct. May 29, 2020) ("[S]ummary judgment should be granted where there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law."). As noted, "under Delaware law, the formation [and modification[7]] of a contract require[] a bargain in which there is a manifestation of mutual assent to the exchange." *See Schaeffer*, 2021 WL 5579050, at *15 (cleaned up). Above, we have identified that there was indeed mutual assent to the contract modification as evidenced by the email communications and course of conduct. It is undisputed that following the initial four payments under the modified agreement, Adagio stopped making payments; thus, Kenco has

---

7. See *supra* note 6.

been deprived of its benefit from the agreement. As explained, a contract was formed and modified under Delaware law. No party disputes that, assuming an enforceable modification came into existence, Adagio breached the terms of that agreement. Accordingly, Kenco was entitled to judgment as a matter of law.

## II. Attorney Fees on Appeal

¶23    On appeal, Kenco also seeks attorney fees in accordance with rule 24(a)(9) of the Utah Rules of Appellate Procedure and the parties' original agreement.[8] Adagio conceded that Kenco is entitled to attorney fees on appeal when it stated that Kenco's request should be denied only "[t]o the extent Adagio prevails on appeal." Because Adagio has not prevailed on appeal, Kenco remains the prevailing party and is entitled to fees under the Contract. Where Kenco received an award of attorney fees below, such an award is also appropriate on appeal. *See Federated Cap. Corp. v. Abraham*, 2018 UT App 117, ¶ 15, 428 P.3d 21 ("A party entitled by contract or statute to attorney fees below and that prevails on appeal is entitled to fees reasonably incurred on appeal." (cleaned up)).

## CONCLUSION

¶24    Because no dispute of material fact exists and because Kenco is entitled to judgment as a matter of law, we affirm the district court's order granting summary judgment and remand the case for the limited purpose of calculating Kenco's award of reasonable attorney fees incurred on appeal.

––––––––––

8. Because the rule governing the award of attorney fees on appeal is "one of procedure[,] . . . Utah law should apply on this point." *See 1600 Barberry Lane 8*, 2021 UT 15, ¶ 35 n.8.