**2025 UT App 24**

## THE UTAH COURT OF APPEALS

CHARLES AARON HUBBARD, LEE ANN HUBBARD, TRACY LEE,
DUANE FRANCE, AND HOLLY FRANCE,
Appellants,
*v.*
JEFFERY J. BECKSTEAD, DAVID CHUGG, JEFFERY BECKSTEAD IRA, AND
DAVID KENT CHUGG IRA,
Appellees.

Opinion
No. 20230202-CA
Filed February 27, 2025

Second District Court, Ogden Department
The Honorable Joseph M. Bean
No. 200906035

M. Darin Hammond and Kenneth Dwayne Kitchen
Brown, Attorneys for Appellants

John E. Keiter, Attorney for Appellees

JUDGE AMY J. OLIVER authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and DAVID N.
MORTENSEN concurred.

OLIVER, Judge:

¶1     For over twenty years, Charles Aaron and Lee Ann
Hubbard, Tracy Lee, and Duane and Holly France (collectively,
Appellants) have used a dirt lane located on a parcel of land
formally used as a railroad (the Railroad Parcel) to access the rear
sections of their properties. In 2007, Union Pacific Railroad (Union
Pacific) deeded the Railroad Parcel to Bartholomew Properties,
LLC (Bartholomew), a predecessor in interest to Jeffery J.
Beckstead, David Chugg, Jeffery Beckstead IRA, and David Kent
Chugg IRA (collectively, Appellees). After Appellees were
deeded the Railroad Parcel, they restricted Appellants' use of the

parcel. Shortly thereafter, Appellants initiated this action seeking to gain continued access to the Railroad Parcel by enforcing their alleged prescriptive easement rights. The district court granted summary judgment to Appellees. Appellants claim that the district court erred in its interpretation of the operative deed. We find no error on the part of the district court and affirm the grant of summary judgment in favor of Appellees.

BACKGROUND

*The Contested Easement*

¶2    Appellees own real property (the Property) in Weber County, Utah, comprised of two parcels, the Railroad Parcel and another parcel. Appellees obtained title to both parcels in 2020 and combined them into one parcel in 2021.

¶3    Appellants own properties in Weber County, Utah, that border the Railroad Parcel on the west. The Railroad Parcel consists of a dirt lane that runs from 1200 West in the City of Farr West alongside the rear of Appellants' properties. Appellants have used the Railroad Parcel to access the rear sections of their properties for over twenty years and have installed gates and open sections of fencing abutting the Railroad Parcel. Appellants used the Railroad Parcel to bring "equipment, improvements, vehicles, and other material" to the rear of their properties "without having to drive through and damage their yards."

¶4    The Railroad Parcel runs along a 100-foot-wide remnant of a railway originally constructed in the 1870s. Union Pacific received the Railroad Parcel in 1874 via a quitclaim deed from Dudley Chase (the 1874 Deed). The 1874 Deed states that Union Pacific paid $914.64 in damages to Chase "on account or by reason of the taking, occupation and use of said strip of land." The 1874 Deed describes the parcel as "[a] strip of land one hundred feet in width, and being fifty feet wide on each side of the center line of

the track of said Railroad, as now located and built, extending through and across the . . . described tract."

¶5      The Railroad Parcel appears to have had an operational railway until 1942 when an Interstate Commerce Commission decision (the 1942 ICC Decision) permitted the abandonment of the operation of the Oregon Short Line Railroad between Corinne Junction and Ogden, Utah. The Railroad Parcel was a segment of the Oregon Short Line Railroad, but the Railroad Parcel was never deeded to the Oregon Short Line Railroad. No other decision from the Interstate Commerce Commission or its successor, the Surface Transportation Board, relating to the Railroad Parcel has been found. No railroad tracks currently exist on the Railroad Parcel, and it is unclear exactly when they were removed.

¶6      In 2007, Union Pacific executed a quitclaim deed (the 2007 Deed) granting Bartholomew all of Union Pacific's "right, title, interest, estate, claim and demand, both at law in equity, of, in and to the real estate . . . in Weber County, State of Utah." However, in the 2007 Deed, Union Pacific specifically excepted and reserved all minerals and mineral rights. The property description included with the 2007 Deed is as follows:

> BEGINNING AT A POINT ON THE WEST LINE OF 1200 WEST STREET, SAID POINT BEING LOCATED NORTH 89°10'32" WEST 588.52 FEET ALONG THE SECTION LINE AND SOUTH 01°47'02" WEST 4210.69 FEET FROM THE NORTHEAST CORNER OF SAID SECTION 1, AND RUNNING THENCE SOUTH 01°47'02" WEST ALONG SAID WEST LINE 291.91 FEET TO THE PROLONGATION OF THE WEST LINE OF THE SOUTHERN PACIFIC RAILROAD RIGHT OF WAY, A 100 FOOT WIDE STRIP OF GROUND AS SHOWN PLAT OF MOUNTAIN VIEW SUBDIVISION PHASE 1, A PLAT RECORDED AT THE OFFICE OF THE WEBER COUNTY

RECORDER, THE POSTION OF SAID SUBDIVISION HAVING BEEN CALCULATED ON THE GROUND BASED ON FOUR EXISTING STREET CENTERLINE MONUMENTS IN SAID SUBDIVISION; THENCE NORTH 18°14′59″ WEST 19.75 FEET ALONG THE WESTERLY LINE OF SAID RAIROAD RIGHT OF WAY TO AN ANGLE POINT ON THE EASTERLY LINE OF SAID MOUNTAIN VIEW SUBDIVISION PHASE 1; THENCE NORTH 18°14′59″ WEST ALONG THE EASTERLY LINE OF SAID SUBDIVISION AND THE WESTERLY LINE OF SAID RIGHT OF WAY 630.01 FEET TO THE PROLONGATION OF THE NORTHERLY LINE OF THE BARTHOLOMEW PROPERTY; THENCE SOUTH 87°51′59″ EAST PARALLEL WITH SAID NORTHERLY LINE 106.68 FEET TO THE NORTHWEST CORNER OF SAID BARTHOLOMEW PROPERTY, SAID POINT BEING ON THE EASTERLY LINE OF SAID RAILROAD RIGHT OF WAY; AND THENCE SOUTH 18°14′59″ EAST ALONG THE WESTERLY LINE OF SAID BARTHOLOMEW PROPERTY AND THE EASTERLY LINE OF SAID RIGHT OF WAY 338.35 FEET TO THE WESTERLY LINE OF SAID 1200 WEST STREET AND THE POINT OF BEGINNING.

¶7 The plat for Mountain View Subdivision Phase 1, where Appellants' properties are located, describes the eastern boundary of the subdivision as

BEGINNING AT A POINT S14°31′05″W 3866.40 FEET FROM THE NE COR. OF SAID SEC. 1, . . . SAID POINT BEING ON THE WEST R.O.W. OF THE SOUTHERN PACIFIC RAILROAD COMPANY AND RUNNING THENCE

> S18°14'00"E 767.58 FEET ALONG SAID . . . R.O.W.
> TO A POINT ON THE WEST R.O.W. OF 1200 WEST
> STREET: THENCE S02°00'00"W 538.50 FEET
> ALONG SAID R.O.W. OF 1200 WEST STREET . . . .

¶8 Southern Pacific Railroad Company, mentioned in both the 2007 Deed and the Mountain View Subdivision Phase 1 plat description, received rights to the Railroad Parcel from Union Pacific at some point between 1874 and 1942. Union Pacific regained control of the Railroad Parcel when the two railroads merged in 1996.

¶9 Following a series of real estate transactions, Appellees purchased the Railroad Parcel in 2020 and received a warranty deed. After the purchase, Appellees began interfering with Appellants' use of the Railroad Parcel, first by dumping dirt on the lane used by Appellants to access their properties and then by cutting off Appellants' access to the Railroad Parcel completely.

*The District Court Proceedings*

¶10 Appellants initiated this action seeking continued access to the Railroad Parcel by enforcement of their alleged prescriptive easement rights. Appellants moved for an ex parte temporary restraining order and preliminary injunction prohibiting Appellees "from grading, altering, or in any way modifying" the Railroad Parcel. The district court granted Appellants' motion for a temporary restraining order, allowing Appellants to use the Railroad Parcel as they had in the past. At a later hearing, the district court granted Appellants' request for a preliminary injunction, which continued Appellants' permitted use of the Railroad Property.

¶11 After discovery, Appellees moved for summary judgment, arguing that Appellants could not establish a prescriptive easement. The district court held oral argument on the summary judgment motion and requested supplemental briefing on the

chain of title. After the supplemental briefing was filed, the district court resumed argument on Appellees' motion for summary judgment. The court stated that it was inclined to grant Appellees' motion for summary judgment because it found that the language of the 1874 Deed and the 1942 ICC Decision support that the transfer from Chase to Union Pacific in the 1874 Deed was not in fee simple. The district court told Appellees to submit an order for the court to consider and permitted the parties to submit any further briefing on chain of title. The court reconvened for a review hearing a little over a month later and granted Appellees' motion for summary judgment.

## ISSUE AND STANDARD OF REVIEW

¶12 Appellants assert that the district court erred in granting summary judgment to Appellees on Appellants' claims. "In reviewing a district court's summary judgment ruling, we review its legal conclusions . . . for correctness." *Arlington Mgmt. Assocs., Inc. v. Urology Clinic of Utah Valley, LLC*, 2021 UT App 72, ¶ 9, 496 P.3d 719 (cleaned up).

## ANALYSIS

¶13 Appellants frame their arguments in various ways on appeal, but in essence, they argue that the district court erred in granting summary judgment when it concluded that (1) the 1874 Deed conveyed something less than fee simple title and (2) they did not establish the requisite twenty years of continuous use required for a prescriptive easement.[1] To assess Appellants'

---

1. Appellants also argue in their reply brief that summary judgment was not appropriate because there are numerous disputes as to material facts. However, because Appellants raised this issue for the first time in their reply brief, the issue is

(continued…)

arguments, we first interpret the 1874 Deed to determine whether Union Pacific received fee simple title to the Railroad Parcel. "When a district court interprets a deed as a matter of law, we accord its construction no particular weight, reviewing its action under a correctness standard." *Keith v. Mountain Resorts Dev., LLC*, 2014 UT 32, ¶ 17, 337 P.3d 213 (cleaned up). We next determine when Union Pacific "ceased to use or retain the land for the purposes for which it was granted," *see Weiser v. Union Pac. R.R. Co.*, 2010 UT 4, ¶ 34, 247 P.3d 357 (cleaned up), in order to determine when the twenty-year time period began to run for Appellants' prescriptive easement claim, *see Kiernan Family Draper, LLC v. Hidden Valley Health Centers, LC*, 2021 UT 54, ¶ 41, 497 P.3d 330 ("To obtain a prescriptive easement, a party must establish a property use that is (1) open, (2) notorious, (3) adverse, and (4) continuous for at least 20 years." (cleaned up)). As set forth below, we conclude that the 1874 Deed conveyed an interest less than fee simple, Union Pacific did not abandon the Railroad Parcel in the 1942 ICC Decision but rather ceased retaining the Railroad Parcel in the 2007 Deed, and Appellants' claim for a prescriptive easement thus runs from the date of the 2007 Deed, less than twenty years ago.

A.      The Pacific Railroad Acts

¶14    The Pacific Railroad Acts were a series of acts passed by the United States Congress to aid in the construction of a transcontinental railroad. *See* Pacific Railroad Act, ch. 120, 12 Stat. 489 (1862); Act of March 3, 1863, ch. 112, 12 Stat. 807 (establishing the gauge of the Pacific Railroad and its branches); Pacific Railroad Act of 1864, ch. 216, 13 Stat. 356 (codified at 43 U.S.C. § 885 (1866)); Pacific Railroad Act of 1865, ch. 88, 13 Stat. 504;

---

considered waived, and we will not address it on the merits. *See State v. Lorenzo*, 2015 UT App 189, ¶ 12, 358 P.3d 330 ("It is well settled that issues raised by an appellant in the reply brief that were not presented in the opening brief are considered waived and will not be considered by the appellate court." (cleaned up)).

Pacific Railroad Act of 1866, ch. 159, 14 Stat. 79. The Pacific Railroad Act of 1864 specifically allowed "Union Pacific Railroad Company" to "enter upon, purchase, take, and hold any lands or premises that may be necessary and proper for the construction and working of said road not exceeding in width one hundred feet on each side of its centre line," and provide the owner of the property with damages. Pacific Railroad Act of 1864, ch. 216, § 3, 13 Stat. 356.

¶15 The 1874 Deed's language and format show that it is governed by the grant of eminent domain power given to Union Pacific in the Pacific Railroad Act of 1864. The 1874 Deed is a fill-in form that has standard language and blank spaces that allow for the particular details to be written in. These include a description of the parcel being transferred, the location of the parcel, and the parties to the transfer. The form language of the deed states that compensation "is in full satisfaction and discharge of all damages" for the "taking, occupation and use of said strip of land."

¶16 The description of the property conveyed to Union Pacific is "[a] strip of land *one* hundred feet in width, and being *fifty* feet wide on each side of the center line of the track of said Railroad, as now located and built."[2] The width of the property deeded to Union Pacific and the existence of railroad tracks at the time of transfer show that the 1874 Deed was a taking under the eminent domain power granted to Union Pacific by the Pacific Railroad Act of 1864. *See id.* Further, the deed compensated Chase for "damages" for a "taking," language that clearly demonstrates that this was a taking under Union Pacific's eminent domain power rather than an arm's length transaction between private parties with consideration. Finally, the fact that a fill-in form was used demonstrates that this was a common transaction that Union Pacific engaged in with all owners of land where railroad tracks had been built. Therefore, the language of the 1874 Deed is not

---

2. The handwritten portion of the description is reflected in italics.

ambiguous; the transaction between Chase and Union Pacific was a taking via the eminent domain powers granted to Union Pacific under the Pacific Railroad Act of 1864.

B.      The Fee Title of the Railroad Parcel

¶17    Because the transfer between Chase and Union Pacific was a taking according to eminent domain powers specifically granted by Congress, Union Pacific did not receive title to the Railroad Parcel in fee simple. Land conveyed to Union Pacific and other railroads under the Pacific Railroad Acts of 1862 and 1864 was granted in limited fee rather than in fee simple. *See Marvin M. Brandt Revocable Trust v. United States*, 572 U.S. 93, 102 (2014) ("The pre-1871 statutes, granting rights of way accompanied by checkerboard land subsidies, conveyed to the railroads a limited fee, made on an implied condition of reverter." (cleaned up)); *Great N. Ry. Co. v. United States*, 315 U.S. 262, 273 n.6 (1942) ("[T]he rights of way conveyed in such land-grant acts [as the 1862 Union Pacific Grant and the 1864 Amended Union Pacific Grant] have been held to be limited fees."); *Northern Pac. Ry. Co. v. Townsend*, 190 U.S. 267, 271 (1903) (holding that land granted to Northern Pacific Railroad Company under eminent domain powers granted to it by Congress was held in "limited fee, made on an implied condition of reverter," rather than in fee simple).

¶18    And as our supreme court recognized, "the United States Supreme Court has clarified that the nature of federal right-of-way grants to railroad companies prior to 1871 are of a limited fee, made on an implied condition of reverter in the event that the company ceased to use or retain the land for the purposes for which it was granted." *Weiser v. Union Pac. R.R. Co.*, 2010 UT 4, ¶ 34, 247 P.3d 357 (cleaned up). Therefore, because the grant from Congress under which Union Pacific obtained its eminent domain power to take the Railroad Parcel occurred prior to 1871, Union Pacific received the Railroad Parcel in limited fee.

C.     The Prescriptive Easement Rights

¶19     Appellants claim that they are entitled to a prescriptive easement because they have used the Railroad Parcel over a period of more than twenty years and otherwise meet the required elements under Utah law. But Appellants could not acquire a prescriptive easement "of greater duration than the interest that [Union Pacific held] in the burdened estate." Jon W. Bruce, James W. Ely Jr. & Edward T. Brading, *The Law of Easements & Licenses in Land*, § 2:9 (updated February 2025); *see also Mansfield v. Neff*, 134 P. 1160, 1164 (Utah 1913) (holding that claims of adverse possession while property is held by a life tenant only accrue against the life tenants and not against the remainder interest holder); *State v. Beeson*, 232 S.W.3d 265, 276–77 (Tex. App. 2007) (holding that "[a]ny prescriptive easement that the landowners possessed against the railroad terminated when the railroad abandoned the property" because it would be unreasonable for the future interest holder's future property rights to be impaired by a prescriptive easement obtained when the future interest holder had no right to possess the property).

¶20     As we explained above, *see supra* ¶¶ 17–18, Union Pacific obtained a limited fee interest in the Railroad Parcel pursuant to the Pacific Railroad Act of 1864. Thus, while Appellants could obtain a prescriptive easement against Union Pacific's limited fee interest in the Railroad Parcel, any prescriptive rights Appellants obtained against Union Pacific's limited fee terminated when Union Pacific relinquished its rights in 2007, and a new prescriptive period began to run against Appellees. Appellants resist this conclusion with two arguments: (1) Union Pacific abandoned the right of way in the Railroad Parcel in 1942 and (2) if Union Pacific received less than fee simple title to the Railroad Parcel in the 1874 Deed, then the successors of Union Pacific, including Appellees, could not obtain fee simple title to the property. We are not persuaded.

¶21 First, Appellants argue that even if Union Pacific did not obtain fee simple title to the Railroad Parcel from the 1874 Deed, Appellants would still have a valid prescriptive easement because Union Pacific abandoned its right of way in the Railroad Parcel in the 1942 ICC Decision. But Appellants misread the 1942 ICC Decision. The first page indicates that the certificate issued by the ICC permitted "abandonment of operation by the Southern Pacific Company . . . over the Oregon Short Line Railroad between Corinne Junction and Ogden, in Box Elder and Weber Counties, Utah." The Southern Pacific Railroad Company did not abandon the right-of-way itself; rather, it abandoned *operation* over the Oregon Short Line Railroad in that particular location. And while it is undisputed that Union Pacific regained its rights in the Railroad Parcel upon merging with the Southern Pacific Railroad Company in 1996, there is no evidence that the Railroad Parcel was ever deeded to the Oregon Short Line Railroad. Thus, the 1942 ICC Decision does not support Appellants' contention that Union Pacific abandoned the Railroad Parcel in 1942.

¶22 Second, the Pacific Railroad Act of 1864 was a "pre–1871 statute[]," and thus, the grant conveyed to Union Pacific under the act was "a limited fee, made on an implied condition of reverter." *Marvin M. Brandt Revocable Trust v. United States*, 572 U.S. 93, 102 (2014) (cleaned up). The "implied reversionary interest" in these pre–1871 grants was retained by the United States.[3] *See id.* at 109. But neither the United States nor anyone else,

---

3. Although not raised by either party, we note that in 1922 Congress passed the Railroad Right-of-Way Abandonment Act, under which the United States relinquished any reversionary interest in the land unless the land was "embraced in a public highway legally established within one year" after the abandonment. 43 U.S.C. § 912. If not embraced as a public highway, the reversionary interest formally held by the United States would revert to the person or entity whose land was traversed by the railroad line. *Id.*

including any descendent of Chase, is asserting rightful ownership of any reversionary interest in the Railroad Parcel. And regardless of who the fee simple owner of the Railroad Parcel is, Appellants cannot obtain a prescriptive easement over the Railroad Parcel because in 2007, when Union Pacific abandoned its rights in the parcel, the property went from being held as a limited fee to being held in fee simple. *See Northern Pac. Ry. Co. v. Townsend*, 190 U.S. 267, 271 (1903) ("In effect the grant was of a limited fee, made on an implied condition of reverter in the event that the company ceased to use or retain the land for the purpose for which it was granted."). Thus, the twenty-year period required to obtain a prescriptive easement started anew in 2007 and does not vest until 2027. *See Orton v. Carter*, 970 P.2d 1254, 1258 (Utah 1998) (holding that a prescriptive easement requires use of another's land "for a period of twenty years" (cleaned up)).

¶23    Therefore, Appellants cannot establish current prescriptive easement rights over the Railroad Parcel because the future interest in the parcel did not vest until Union Pacific abandoned its right of way less than twenty years ago via the 2007 Deed.

CONCLUSION

¶24    Because the 1874 deed conveyed the Railroad Parcel to Union Pacific in limited fee rather than fee simple, any prescriptive easement claim Appellants had against Union Pacific was only against Union Pacific's limited fee interest in the Railroad Parcel. Accordingly, when Union Pacific sold its interest in the parcel in 2007 and it returned to fee simple form, the prescriptive period began anew, so Appellants could not possibly meet the length of time required for a prescriptive easement until 2027. Therefore, Appellants have not demonstrated they have a prescriptive easement on the Railroad Parcel and summary judgment in favor of Appellees was properly granted.

_____